Filed 8/20/15

# IN THE SUPREME COURT OF CALIFORNIA

NANCY F. LEE, )
)
    Plaintiff and Appellant, )
) S220775
v. )
) Ct.App. 4/3 G048501
WILLIAM B. HANLEY, )
) Orange County
    Defendant and Respondent. ) Super. Ct. No. 30-2011-00532352
_____)

Code of Civil Procedure section 340.6, subdivision (a) (hereafter section 340.6(a)) provides: "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission . . . ." We granted review to decide whether an attorney's refusal to return a former client's money after the client terminated the representation was "a wrongful act or omission . . . arising in the performance of professional services" under section 340.6(a). We hold that section 340.6(a) applies to a claim when the merits of the claim will necessarily depend on proof that an attorney violated a professional obligation — that is, an obligation the attorney has *by virtue of* being an attorney — in the course of providing professional services. Such claims brought more than one year after the plaintiff discovers or through reasonable diligence should have discovered the facts

underlying the claim are time-barred by section 340.6(a) unless the plaintiff alleges actual fraud.

According to plaintiff Nancy Lee's second amended complaint, she advanced defendant Attorney William Hanley funds to cover attorney's fees in litigation, but Hanley refused to return unearned attorney's fees after Lee terminated the representation. Hanley demurred on the ground that the lawsuit was barred by section 340.6(a). After concluding that section 340.6(a) applied to Lee's claims and that she filed her complaint more than one year after Hanley informed her that he would not return her money, the trial court sustained the demurrer with leave to amend. Lee declined to file a further amended complaint, and the trial court dismissed the case.

We conclude the trial court erred in sustaining the demurrer. In this procedural posture, the trial court was required to construe all factual allegations in the complaint in Lee's favor. Lee's allegations, if true, would show that Hanley has violated certain professional obligations in the course of providing professional services, and any claim based on his violation of these obligations is time-barred. But the complaint can also be construed to allege a claim for conversion whose ultimate proof at trial may not depend on the assertion that Hanley violated a professional obligation. Thus, on at least one reasonable construction of the complaint, at least one of Lee's claims is not time-barred. We therefore affirm the Court of Appeal's judgment reversing the trial court's order sustaining defendant's demurrer.

## I.

"On review of the judgment of the Court of Appeal reversing the superior court's order[] sustaining defendant['s] demurrer[], we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose." (*McCall*

2

*v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) Accordingly, we assume the truth of the allegations in Lee's second amended complaint.

Lee retained Hanley to represent her in a civil litigation matter and over several months advanced Hanley $110,000 to be used for attorney's fees and costs as well as $10,000 to be used for expert witness fees. The matter settled on January 25, 2010. On February 1, 2010, Hanley sent Lee a letter and an invoice for legal services, both of which indicated that Lee had a credit balance of $46,321.85. In April 2010, Lee telephoned Hanley to request a final billing statement and a refund of her final credit balance. Hanley responded that Lee did not have a credit balance and would not receive a refund.

On December 6, 2010, Lee and her new lawyer, Walter Wilson, each sent Hanley a letter, terminating Hanley's services and demanding a refund of $46,321.85 in unearned attorney's fees and approximately $10,000 in unused expert witness fees. On December 28, 2010, Hanley returned $9,725 in unused expert witness fees. He has not returned any unearned attorney's fees.

On December 21, 2011, over a year after sending her demand letter to Hanley, Lee filed suit. Hanley demurred on the ground that Lee's lawsuit was time-barred under section 340.6(a). Before the trial court ruled on the demurrer, Lee filed her first amended complaint, so the trial court ruled that the demurrer was moot. Hanley demurred to the first amended complaint on the same basis as his original demurrer. Concluding that section 340.6 barred all of Lee's claims, the trial court sustained the demurrer with leave to amend.

Lee filed a second amended complaint. The second amended complaint alleged that Hanley "provided appropriate legal services . . . and [Lee] did not suffer any injury from said services . . . ." The second amended complaint further alleged: "On or about February 1, 2010, defendants sent to plaintiff the LAST BILLING for fees/costs through the DISMISSAL . . . , offsetting their earned

3

fees/costs against the WAR CHEST, informing plaintiff the remainder was a 'credit balance' — after all professional services were completed — of $46,321. [¶] Within a reasonable time after transmission of the LAST BILLING, but no later than March 1, 2010, defendants should have paid plaintiff's credit balance to plaintiff, but did not. [¶] As a direct and proximate result of defendants' and each of their [*sic*] failure to return to plaintiff the unearned fees/costs, defendants were unjustly enriched, and plaintiff lost, said $46,321. Plaintiff herein seeks the return of said unearned funds. Plaintiff also seeks interest on said funds, at the legal rate of 10% from March 1, 2010 through Judgment."

Hanley again demurred on section 340.6(a) grounds. The trial court issued a tentative ruling sustaining the demurrer without leave to amend, stating that "the funds were advanced in connection with the performance of professional services and the attorney was required to return the funds upon his discharge." At oral argument, Lee suggested that she could cure the defects in her complaint and requested leave to amend. The trial court sustained the demurrer but allowed Lee leave to amend by adding a count for fraud. When Lee did not file a further amended complaint, the trial court dismissed the action with prejudice.

Lee appealed, arguing that section 340.6(a) does not apply to her claims. In the alternative, she argued that the limitations period was tolled from December 6, 2010 to December 28, 2010 because Hanley continued to represent her until the day he returned her unused expert witness fees. She also argued that the limitations period did not begin to run until she discovered Hanley's belief that his retention of her credit balance arose in the performance of professional services.

The Court of Appeal's opinion began by observing that section 340.6(a) does not apply to every conceivable case in which a client alleges that an attorney took actions that wronged him or her. For example, section 340.6(a) would not bar a claim that an attorney stole money from a client's unattended purse, even if

4

the client was in the attorney's office to discuss a lawsuit. A garden-variety theft claim against an attorney alleges wrongful conduct, but that conduct does not arise in the performance of professional services even if the client and the attorney were discussing legal matters at the time the theft took place.

After reviewing the allegations in Lee's second amended complaint, the Court of Appeal determined that the complaint could be construed to advance a claim for conversion, and a claim for conversion is not relevantly different from a claim for garden-variety theft. Thus, the court concluded, section 340.6(a) might not bar Lee's lawsuit. The court explained: "We do not know whether, on remand, the facts as ultimately developed will show a theft of funds, an accounting error, or something else. While a cause of action based on the theft or conversion of client funds, for example, would not be subject to the section 340.6 statute of limitations, a cause of action predicated on an accounting error could be." Finding that the trial court erred in sustaining the demurrer, the Court of Appeal reversed.

Finally, the Court of Appeal addressed Lee's tolling and date of discovery arguments in case she continued to assert claims to which section 340.6(a) would apply on remand. The court held that the statute of limitations began to run no later than December 6, 2010, when Lee and her attorney sent Hanley a letter terminating the representation. The court further held that, for purposes of section 340.6(a), the date of discovery is the date Lee discovered or should have discovered Hanley's wrongful conduct, not the date she discovered Hanley's belief that section 340.6(a) may apply to her lawsuit. We granted review.

**II.**

"When a demurrer is sustained with leave to amend, and the plaintiff chooses not to amend but to stand on the complaint, an appeal from the ensuing dismissal order may challenge the validity of the intermediate ruling sustaining the demurrer." (*County of Santa Clara v. Atlantic Richfield Co.* (2006) 137

5

Cal.App.4th 292, 312, citing *Bank of America v. Superior Court* (1942) 20 Cal.2d 697, 703.) " ' "A demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred. [Citation.] In order for the bar . . . to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred." ' " (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42 (*Committee for Green Foothills*).)

We review de novo questions of statutory construction. (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 387.) In doing so, " 'our fundamental task is "to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute." . . . We begin by examining the statutory language because it generally is the most reliable indicator of legislative intent. We give the language its usual and ordinary meaning, and "[i]f there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs." . . . If, however, the statutory language is ambiguous, "we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history." . . . Ultimately we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute.' " (*Mays v. City of Los Angeles* (2008) 43 Cal.4th 313, 321, citations omitted.)

**A.**

As noted, the claims in Lee's complaint cannot survive the demurrer if they are for "a wrongful act or omission, other than for actual fraud, arising in the performance of professional services" within the meaning of section 340.6(a). The statutory text does not by itself make clear whether the phrase "arising in the performance of professional services" limits the scope of section 340.6(a) to legal malpractice claims or covers a broader range of wrongful acts or omissions that

6

might arise during the attorney-client relationship.  Because the text is ambiguous (see *Roger Cleveland Golf Co., Inc. v. Krane & Smith, APC* (2014) 225 Cal.App.4th 660, 678 (*Roger Cleveland*) [finding section 340.6(a) ambiguous]), we proceed to examine the statute's purpose and legislative history.

The Legislature enacted section 340.6(a) in 1977 amid rising legal malpractice insurance premiums.  (See Mallen, *Panacea or Pandora's Box? A Statute of Limitations for Lawyers* (1977) 52 Cal. State Bar J. 22 (hereafter Mallen) ["During the last year, insurance premiums of California attorneys have increased from 100 per cent to almost 400 per cent."]; Hill, *The Bar at Bay — Malpractice Woes Hit Attorneys As Lawsuits Against Them Increase*, Wall Street Journal (Feb. 3, 1976) p. 1, col. 1; *Beal Bank, SSB v. Arter & Hadden, LLP* (2007) 42 Cal.4th 503, 510 (*Beal Bank*).)  The increase in premiums was due in part to two features of the law that had produced uncertainty surrounding the limitations period for claims of legal malpractice.

First, our decisions in *Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176 and *Budd v. Nixen* (1971) 6 Cal.3d 195 held that a cause of action for legal malpractice does not accrue until the client discovers, or should have discovered, the facts establishing the elements of the cause of action.  (*Neel*, at p. 190; *Budd*, at p. 203.)  These decisions made it difficult for attorneys and insurers to determine when the limitations period for potential malpractice lawsuits began to run.

Second, before 1977, the limitations periods for malpractice lawsuits depended on the forms of action contained in a plaintiff's complaint.  Lawsuits for malpractice were subject to different limitations periods depending on whether the plaintiff pleaded breach of a written contract (Code Civ. Proc., § 337 [four years]), fraud (*id.*, § 338 [three years]), or breach of an oral contract or a tort affecting intangible property (*id.*, § 339, subd. (1) [two years]).  (See Sen. Com. on

7

Judiciary, analysis of Assem. Bill No. 298 (1977–1978 Reg. Sess.) as amended May 17, 1977, p. 2.) Under the old scheme, attorneys could not be certain of the applicable limitations period for potential claims of malpractice.

The Legislature responded by enacting Assembly Bill No. 298 (1977–1978 Reg. Sess.), which added section 340.6 to the Code of Civil Procedure. (Hereafter Assembly Bill 298.) The Legislature sought to "reduce[] the cost of legal malpractice insurance" and "limit[] the open-endedness" of the various limitations periods for claims against attorneys. (Sen. Democratic Caucus, Rep. on Assem. Bill No. 298 (1977–1978 Reg. Sess.) as amended Aug. 17, 1977; see *Stoll v. Superior Court* (1992) 9 Cal.App.4th 1362, 1368 (*Stoll*) ["The limitation of one year was designed to counteract the potential of lengthy periods of potential liability wrought by the adoption of the discovery rule, and thereby reduce the costs of malpractice insurance."].)

The bill's evolution in the Legislature helps to further illuminate the statute's purpose. As originally introduced on January 25, 1977, the proposed bill provided in relevant part: "In any action for damages against an attorney based upon the attorney's alleged professional negligence, the time for the commencement of action shall be three years after the date of the negligent act or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the damage, whichever first occurs." (Assem. Bill. No. 298 (1977–1978 Reg. Sess.) as introduced Jan. 25, 1977.) On May 9, 1977, the bill was amended in the Assembly to read in relevant part: "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first." (Assem. Bill.

8

No. 298 (1977–1978 Reg. Sess.) as amended May 9, 1977.) Thus, the Assembly replaced the bill's original phrase "professional negligence" with the ultimately enacted phrase "wrongful act or omission, other than for actual fraud, arising in the performance of professional services."

Although the legislative history does not explain the substitution, the amended language can be traced to a proposal in a State Bar Journal article submitted to the Assembly Committee on Judiciary around the time of the amendment. (Assem. Com. on Judiciary, Dig. of Assem. Bill No. 298 (1977–1978 Reg. Sess.) as amended on Mar. 9, 1977, p. 3, citing Mallen, *supra*, 52 State Bar J. 22.) That article proposed a single statute of limitations applicable to legal malpractice claims. The author suggested using the phrase "[a]n action against an attorney for a wrongful act or omission" rather than "malpractice" because " 'malpractice' is not in itself a word of precise definition. Legal malpractice is best stated in terms of the actual wrong: a wrongful act or omission occurring in the rendition of professional services." (Mallen, at p. 77.) We have previously observed that Assembly Bill 298 "dr[ew] heavily from" this article and was "rewritten with Mallen's proposal as a template, borrowing verbatim" some of the language appearing in Mallen's article. (*Beal Bank*, *supra*, 42 Cal.4th at p. 510.) Thus, in enacting the final version of the bill, the Legislature intended to establish a limitations period that would apply broadly to any claim concerning an attorney's violation of his or her professional obligations in the course of providing professional services regardless of how those claims were styled in the plaintiff's complaint.

At the same time, the legislative history following the change continued to indicate that the Legislature's primary focus was establishing a new limitations period for legal malpractice. All legislative history subsequent to the May 9, 1977 amendment continued to speak of the bill as creating a statute of limitations for

9

legal malpractice claims. (See, e.g., Assem. Com. on Judiciary, Dig. of Assem. Bill No. 298 (1977–1978 Reg. Sess.) as amended May 9, 1977; Off. of Legal Affairs, Enrolled Bill Rep. on Assem. Bill No. 298 (1977–1978 Reg. Sess.) Sept. 15, 1977; see also *Roger Cleveland*, *supra*, 225 Cal.App.4th at p. 681 ["all the subsequent legislative material that we have reviewed referred to what became section 340.6 as a statute of limitations for legal malpractice"]; *Southland Mechanical Constructors Corp. v. Nixen* (1981) 119 Cal.App.3d 417, 427 (*Southland*) ["From the time the statute was introduced in the Assembly to its ultimate signing by the Governor, every legislative analysis on section 340.6 . . . began with a review of existing statutes of limitation applicable to legal malpractice actions, including section 337, subdivision (1) for actions based on a written contract."], disapproved on other grounds, *Laird v. Blacker* (1992) 2 Cal.4th 606, 617.) Assembly Bill 298 passed the Senate on August 23, 1977 and the Assembly on September 1, 1977.

In a letter urging Governor Brown to sign the bill, the bill's sponsor wrote: "This bill creates a new statute of limitations for legal malpractice actions in an effort to close off the present open-ended time frame allowed for such actions." (Assemblyman Willie L. Brown, Jr., letter to Governor Edmund G. Brown, Jr., Aug. 31, 1977, p. 1.) Governor Brown approved Assembly Bill 298 on September 16, 1977.

**B.**

From the legislative history described above, we draw two conclusions about the Legislature's purpose in enacting section 340.6(a). First, the Legislature sought to eliminate the former limitations scheme's dependence on the way a plaintiff styled his or her complaint. Analyses produced in committee identified this dependence as one of the sources of uncertainty in the pre-1977 limitations scheme. (Sen. Com. on Judiciary, analysis of Assem. Bill No. 298 (1977–1978

10

Reg. Sess.) as amended May 17, 1977, p. 2.) Similarly, the State Bar Journal article that outlined the amendment to the statutory text suggested that the statute be "stated in terms of the actual wrong" rather than in terms of a single cause of action, i.e., professional negligence. (Mallen, *supra*, 52 Cal. State Bar J. at p. 77.) Thus, Assembly Bill 298 consolidated the prior limitations periods applicable to malpractice claims against attorneys. The Legislature enacted the statute so that the applicable limitations period for such claims would turn on the conduct alleged and ultimately proven, not on the way the complaint was styled. (See *Prakashpalan v. Engstrom, Lipscomb and Lack* (2014) 223 Cal.App.4th 1105, 1121–1122 (*Prakashpalan*) [section 340.6(a) applies to a breach of fiduciary duty claim]; *Yee v. Cheung* (2013) 220 Cal.App.4th 184, 195–196 [same for malicious prosecution]; *Vafi v. McCloskey* (2011) 193 Cal.App.4th 874, 881–883 [same for malicious prosecution]; *Stoll*, *supra*, 9 Cal.App.4th at p. 1366 [same for breach of fiduciary duty]; *Southland*, *supra*, 119 Cal.App.3d at pp. 428–431 [same for breach of contract].)

Second, the version of the bill that the Legislature ultimately adopted was designed to give Assembly Bill 298 a broader sweep than its original language would have provided. As a result of the May 9, 1977 amendment, the statute applies not only to actions for professional negligence but to any action alleging wrongful conduct, other than actual fraud, arising in the performance of professional services. At the same time, the Legislature continued to make clear that its primary purpose was to address the growing cost of malpractice lawsuits. That is why committee reports and analyses throughout the legislative process focused on rising legal malpractice insurance premiums. Thus, while section 340.6(a) applies to claims other than strictly professional negligence claims, it does not apply to claims that do not depend on proof that the attorney violated a *professional* obligation.

11

In light of these observations, we conclude that section 340.6(a)'s time bar applies to claims whose merits necessarily depend on proof that an attorney violated a professional obligation in the course of providing professional services. In this context, a "professional obligation" is an obligation that an attorney has by virtue of being an attorney, such as fiduciary obligations, the obligation to perform competently, the obligation to perform the services contemplated in a legal services contract into which an attorney has entered, and the obligations embodied in the Rules of Professional Conduct. By contrast, as the Court of Appeal observed, section 340.6(a) does not bar a claim for wrongdoing — for example, garden-variety theft — that does not require proof that the attorney has violated a professional obligation, even if the theft occurs while the attorney and the victim are discussing the victim's legal affairs. Section 340.6(a) also does not bar a claim arising from an attorney's performance of services that are not "professional services," meaning "services performed by an attorney which can be judged against the skill, prudence and diligence commonly possessed by other attorneys." (*Quintilliani v. Mannerino* (1998) 62 Cal.App.4th 54, 64 (*Quintilliani*).)

Both parties disagree, at least in part, with this holding. Lee observes that the Legislature in enacting section 340.6(a) was primarily concerned with legal malpractice. In her view, section 340.6(a) applies only when an attorney is "acting as an attorney" — that is, only when an attorney performs services that require a license to practice law. Lee thus urges us to distinguish between legal and nonlegal services, and to hold that section 340.6(a) does not apply to claims based on an attorney's provision of nonlegal services that are merely incidental to the practice of law. Because safely keeping and timely returning client funds is merely incidental to a lawyer's provision of legal services, Lee argues, section 340.6(a) does not apply to her lawsuit.

This view falters on the statutory text, which speaks of wrongful conduct "arising in the performance of *professional* services," not merely *legal* services. (§ 340.6(a), italics added.) To be sure, section 340.6(a) does not apply to claims involving an attorney's provision of services unrelated to the practice of law, such as concert promotion. (See *Quintilliani*, *supra*, 62 Cal.App.4th at p. 64.) But the attorney-client relationship often requires attorneys to provide nonlegal professional services such as accounting, bookkeeping, and holding property in trust. (See *Prakashpalan*, *supra*, 223 Cal.App.4th at p. 1122, fn. 4.) Indeed, the training and regulation that make the practice of law a profession, as well as the grounds on which an attorney may be disciplined *as an attorney*, include professional obligations that go beyond duties of competence associated with dispensing legal advice or advocating for clients in dispute resolution. (See, e.g., Cal. Rules of Prof. Conduct, rule 4-100 [governing an attorney's handling of a client's property].) In light of the Legislature's intent that section 340.6(a) cover more than claims for legal malpractice, the term "professional services" is best understood to include nonlegal services governed by an attorney's professional obligations.

Hanley urges us to construe section 340.6(a) to apply to all forms of attorney misconduct, except actual fraud, that occur during the attorney-client relationship or entail the violation of a professional obligation. Although the Legislature intended section 340.6(a) to apply to most lawsuits between clients and their attorneys, so as to reduce the uncertainty driving the cost of malpractice insurance premiums (*ante*, at pp. 7–8), Hanley's proposed construction sweeps too broadly.

Misconduct does not "aris[e] in" the performance of professional services for purposes of section 340.6(a) merely because it occurs during the period of legal representation or because the representation brought the parties together and

13

thus provided the attorney the opportunity to engage in the misconduct. To hold otherwise would imply that section 340.6(a) bars claims unrelated to the Legislature's purposes in enacting section 340.6(a) — for example, claims that an attorney stole from or sexually battered his client while the attorney was providing legal advice. Nor does section 340.6(a) necessarily apply whenever a plaintiff's allegations, if true, would entail a violation of an attorney's professional obligations. The obligations that an attorney has by virtue of being an attorney are varied and often overlap with obligations that all persons subject to California's laws have. For example, everyone has an obligation not to sexually batter others (see Civ. Code, § 1708.5, subd. (a)), but attorneys also have a professional obligation not to do so in the particular context of the attorney-client relationship (see Cal. Rules of Prof. Conduct, rule 3-120). For purposes of section 340.6(a), the question is not simply whether a claim alleges misconduct that entails the violation of a professional obligation. Rather, the question is whether the claim, in order to succeed, necessarily depends on proof that an attorney violated a professional obligation as opposed to some generally applicable nonprofessional obligation.

Hanley maintains that when an attorney's professional obligations overlap with generally applicable obligations, today's holding can be exploited by artful pleading. He argues, for example, that a claim most naturally understood as an ordinary fee dispute, based on alleged deficiencies in the attorney's performance, can be styled as a claim for conversion. But plaintiffs involved in ordinary fee disputes cannot evade the statute as Hanley suggests. Proper pleading requires a complaint to contain a "statement of the facts constituting the cause of action, in ordinary and concise language." (Code Civ. Proc., § 425.10, subd. (a)(1).) Further, the attorney or party filing the complaint must certify that the facts stated in the complaint "have evidentiary support." (*Id.*, § 128.7, subd. (b)(3).) These

14

requirements force parties "to give fair notice of their claims to opposing parties so they can defend" (*Ameron Internat. Corp. v. Insurance Co. of State of Pennsylvania* (2010) 50 Cal.4th 1370, 1384) and to " ' "set forth the essential facts of [the] case with reasonable precision and with particularity sufficient to acquaint a defendant with the nature, source and extent of [the] cause of action" ' " (*Doheny Park Terrace Homeowners Assn., Inc. v. Truck Ins. Exchange* (2005) 132 Cal.App.4th 1076, 1099). If the facts stated in the complaint show that the basis for the plaintiff's conversion claim is that an attorney provided deficient legal services, then the plaintiff's claim will depend on proof that the attorney violated a professional obligation in the course of providing professional services and will thus be time-barred. (See *Levin v. Graham & James* (1995) 37 Cal.App.4th 798, 803–805 [section 340.6(a) barred claim that law firm charged unconscionable fees because claim was based on allegation that firm provided deficient legal services].) To be sure, a plaintiff in an ordinary fee dispute could attempt to evade dismissal by omitting the underlying factual basis for a conversion claim. (Cf. dis. opn., *post*, at p. 3.) But most such attempts will fall victim to the requirement that a complaint provide facts that give fair notice to the opposing party. And even if such a claim does survive the dismissal stage, it cannot survive summary judgment. Section 340.6(a) applies as soon as discovery makes clear that the claim's underlying basis consists of evidence that the attorney provided deficient professional services.

Finally, Hanley objects that today's holding creates an exception to section 340.6(a) even though "actual fraud" is the only exception provided in the statute. "[I]f exemptions are specified in a statute, we may not imply additional exemptions unless there is a clear legislative intent to the contrary." (*Sierra Club v. State Bd. of Forestry* (1994) 7 Cal.4th 1215, 1230.) But our decision does not exempt from section 340.6(a)'s ambit any "action against an attorney for a

15

wrongful act or omission, other than for actual fraud, arising in the performance of professional services." Instead, our decision explains the meaning of that language: Section 340.6(a) applies to claims that necessarily depend on proof that an attorney violated a professional obligation in the course of providing professional services unless the claim is for actual fraud.

Our holding today is in tension with statements in *Roger Cleveland*, *supra*, 225 Cal.App.4th 660, 677 [reading section 340.6(a) "as a professional negligence statute"] and *David Welch Co. v. Erskine & Tulley* (1988) 203 Cal.App.3d 884, 893 ["[W]here a cause of action is based on a defendant's breach of its fiduciary duties, the four-year catchall statute set forth in Code of Civil Procedure section 343 applies."].) We disapprove those decisions to the extent they are inconsistent with this opinion.

### C.

The posture of this case requires us to assume the truth of the allegations in Lee's complaint. In that posture, we conclude that the trial court erred in sustaining the demurrer on section 340.6(a) grounds because, based solely on the allegations in the relevant complaint, Lee's lawsuit is not necessarily barred. (*Committee for Green Foothills*, *supra*, 48 Cal.4th at p. 42.)

" ' "Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. . . ." ' " (*Welco Electronics, Inc. v. Mora* (2014) 223 Cal.App.4th 202, 208.) Lee's complaint may be construed to allege that Hanley is liable for conversion for simply refusing to return an identifiable sum of Lee's money. Thus, at least one of Lee's claims does not necessarily depend on proof that Hanley violated a professional obligation in the course of providing professional services. Of course, Lee's allegations, if true,

16

may also establish that Hanley has violated certain professional obligations, such as the duty to refund unearned fees at the termination of the representation (Cal. Rules of Prof. Conduct, rule 3-700(D)(2)), just as an allegation of garden-variety theft, if true, may also establish a violation of an attorney's duty to act with loyalty and good faith toward a client. But because Lee's claim of conversion does not necessarily depend on proof that Hanley violated a professional obligation, her suit is not barred by section 340.6(a).

We do not suggest that Hanley is in fact liable for conversion. At this stage, we do not know whether Hanley disputes that he owes Lee the money she claims (perhaps they had previously agreed that Hanley could keep any leftover portion of the advance), whether Hanley made a bookkeeping error in handling Lee's money, or whether Hanley misspent Lee's money or decided to keep it for no good reason. If, for example, Lee's claim turns out to hinge on proof that Hanley kept her money pursuant to an unconscionable fee agreement (Cal. Rules of Prof. Conduct, rule 4-200) or that Hanley did not properly preserve client funds (*id.*, rule 4-100), her claim may be barred by section 340.6(a). At this stage, however, without any development of the facts, we cannot conclude that section 340.6(a) necessarily bars Lee's claim.

17

## CONCLUSION

For the reasons above, we affirm the Court of Appeal's reversal of the trial court's judgment sustaining the demurrer.

**LIU, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CUÉLLAR, J.**
**KRUGER, J.**

18

**DISSENTING OPINION BY CORRIGAN, J.**

In my view, the applicability of Code of Civil Procedure section 340.6[1] is largely resolved by the language of the statute, which the majority opinion discusses only sparingly.

Section 340.6 states, in relevant part: "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year" after the plaintiff's discovery of the wrongful act or four years after the date of the wrongful act. "Arising in the performance of professional services" modifies "wrongful act or omission," describing the type of conduct that triggers the statute. This court has construed similar language in the anti-SLAPP[2] statute. Section 425.16 authorizes a motion to strike for "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . ." (*Id.*, subd. (b)(1).) We explained that "arising from" in section 425.16 means that the cause of action must be based on conduct in furtherance of the defendant's right of petition or free speech. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) Applying the same construction here, a cause of action subject to section 340.6 must be based on an attorney's conduct in performing a professional service.

---

[1]     All statutory references are to the Code of Civil Procedure.

[2]     The acronym stands for strategic lawsuits against public participation. (See Canan & Pring, *Strategic Lawsuits Against Public Participation* (1988) 35 Soc. Probs. 506.)

From a plain reading of the statutory language, I would hold that section 340.6 governs any claim against an attorney, except for actual fraud, that is based on the attorney's wrongful conduct in performing professional services. It does not matter how the claim is specifically pleaded or what proof is ultimately necessary to support it. What matters is the nature of the alleged wrongdoing: Was the conduct logically encompassed in the attorney's performance of professional services? If so, section 340.6 requires that any claim based on that conduct be brought within one year of discovery or four years of the conduct. If not, some other limitations period applies.

Legislative history is consistent with this interpretation. As the majority opinion ably demonstrates, the Legislature's intent in enacting section 340.6 was "to establish a limitations period that would apply broadly to any claim concerning an attorney's violation of his or her professional obligations in the course of providing professional services *regardless of how those claims were styled in the plaintiff's complaint.*" (Maj. opn., *ante*, at p. 9, italics added.) To instill certainty and reduce legal malpractice premiums, the Legislature drafted section 340.6 to focus on the nature of the attorney's alleged wrongdoing, rather than how it is labeled in a cause of action. (See maj. opn., *ante*, at pp. 10-11.)

I generally agree with the majority's assessment of legislative intent. It goes astray, however, in defining the test for when section 340.6 applies. The majority recognizes that the Legislature sought to remove the limitation scheme's dependence on how a claim is pleaded. (Maj. opn., *ante*, at p. 10.) In place of "pleadings," however, the majority would simply substitute "pleadings and proof." The majority thus holds that applicability of the statute turns on "the conduct alleged and *ultimately proven*" (*id.* at p. 11, italics added) and extends only to "claims whose merits *necessarily depend on proof* that an attorney violated a professional obligation in the course of providing professional services" (*id.* at p. 12, italics added). This formulation has no apparent basis in the statute's language or legislative history. By focusing on "ultimate[]" or "necessar[y]"

2

proof, the majority effectively narrows the class of claims to which section 340.6 applies. That is a line for the Legislature to draw, not this court.

Moreover, in all but the most straightforward malpractice cases, the majority's rule will make it difficult or impossible for untimely claims against attorneys to be resolved before trial. How can one predict what proof will be necessary to support a claim before the plaintiff tries her case? Except for factual questions surrounding when a plaintiff has discovered injury or wrongdoing, there appears to be no other context in which the applicability of a limitations statute is governed by the plaintiff's ultimate proof. A delay in resolving statute of limitations defenses cannot be squared with the legislative goals of providing certainty and reducing the costs associated with malpractice lawsuits (see maj. opn., *ante*, at pp. 10-11).

The greatest problem with the majority's interpretation, however, is how little it differs from the pleadings-based triggers that section 340.6 replaced. Although couched in language of proof, rather than pleadings, the majority's rule continues to elevate the form of the plaintiff's cause of action over the substance of the defendant's wrongful conduct. Application of the rule here shows why this is so. After the one-year limitations period in section 340.6 expired, Lee sued Hanley for breach of contract, breach of fiduciary duty, and related equitable violations. The majority concedes these claims are barred but concludes dismissal was improper because Lee might be able to plead a viable claim for conversion on remand. Thus, despite clear legislative intent "to eliminate the former limitations scheme's dependence on the way a plaintiff styled his or her complaint" (maj. opn., *ante*, at p. 10), the majority opinion suggests a plaintiff can avoid section 340.6 by labeling her claim a different way. To be sure, the majority gives assurances that the statute's application will ultimately depend on the nature of a plaintiff's proof, not just her pleading. However, if Lee can prove conversion without referring *too much* to Hanley's professional violations, her claim would appear unbarred by section 340.6. Exactly how much a plaintiff's proof can touch

3

upon or concern an attorney's professional obligations without triggering the statute is left unclear.

A straightforward interpretation of section 340.6 would avoid artful attempts at evasion and would allow untimely claims to be dismissed before expenses mount in discovery and trial. A straightforward reading of the statute makes clear that what matters is the nature of the wrongful conduct alleged. Specifically, to "aris[e] in the performance of professional services" (§ 340.6), the wrongful conduct must have some close and logical relationship to those professional services.[3]

Here, Lee hired Hanley to represent her in civil litigation. She paid him to do so, advancing fees and costs. The lawsuit settled, and Lee now alleges Hanley did not return a large portion of unused fees. The present dispute directly relates to whether Hanley acted wrongfully in keeping the money. Hanley was paid in advance for his performance of legal services. As the pending State Bar disciplinary action against him indicates, he arguably violated professional rules by failing to return the unused advances. Hanley's alleged wrongful acts "ar[ose] in the performance of professional services" (§ 340.6) because they were closely and logically related to his service as Lee's attorney. Accordingly, regardless of whether Lee could style her complaint some other way, I would uphold the judgment of the trial court finding her claims against Hanley barred by section 340.6.

**CORRIGAN, J.**

**I CONCUR:**

**CHIN, J.**

---

**3** It seems unlikely that sexual battery or outright theft could ever be closely or logically connected to the performance of legal services. (See maj. opn., *ante*, at p. 14.) A broader interpretation of the statute need not lead to such absurd results.

4

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Lee v Hanley

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 227 Cal.App.4th 1295
**Rehearing Granted**

_____

**Opinion No.** S220775
**Date Filed:** August 20, 2015

_____

**Court:** Superior
**County:** Orange
**Judge:** Robert J. Moss

_____

**Counsel:**

Walter J. Wilson for Plaintiff and Appellant.

Law Office of Dimitri P. Gross and Dimitri P. Gross for Defendant and Respondent.

Meyers Nave, Buchalter Nemer and Harry W.R. Chamberlain II for Association of Southern California Defense Counsel as Amicus Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Walter J. Wilson
333 West Broadway, Suite 200
Long Beach, CA   90802
(562) 432-3388

Dimitri P. Gross
Law Office of Dimitri P. Gross
19200 Von Karman Avenue, Suite 900
Irvine, CA  92612
(949) 788-1007

Harry W.R. Chamberlain II
Buchalter Nemer
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA  90017
(213) 891-0700