Filed 2/26/16  Prevost Healthcare Enterprises v. Kirkpatrick CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PREVOST HEALTHCARE ENTERPRISES, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ALEXANDER W. KIRKPATRICK et al., <br><br> Defendants and Appellants. <br> . | B259484 <br><br> (Los Angeles County <br> Super. Ct. No. EC060530) <br><br><br> ORDER MODIFYING OPINION <br> AND DENYING REHEARING <br><br> [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on February 5, 2016 be modified as follows:

On page 12, footnote 2, in the first sentence, delete the words "At oral argument" so that the footnote now reads:

[2] Kirkpatrick also argued that we should reverse because Watts did not sustain any damages. As a result of DHCS's denial of the appeal, Kirkpatrick argued, Watts was "not entitled to fill these prescriptions or bill Medi-Cal for them in the first place."  In other words, because Watts was not entitled to the overpayments, it was not damaged by the requirement that he had to return the overpayments.  But this argument ignores the reality that Watts dispensed the prescriptions over a period of many months with the expectation that he would be paid Medi-Cal rates for them, and he did so as a direct result of

Kirkpatrick's negligence. Kirkpatrick's position therefore boils down to an argument that Watts should bear the brunt of Kirkpatrick's error.  This argument is unavailing.

The petition for rehearing is denied.

_____

WILLHITE, Acting P.J.   MANELLA, J.   COLLINS, J.

Filed 2/5/16  Prevost Healthcare Enterprises v. Kirkpatrick CA2/4 (unmodified version)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| PREVOST HEALTHCARE ENTERPRISES, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ALEXANDER W. KIRKPATRICK et al., <br><br> Defendants and Appellants. <br> . | B259484 <br><br> (Los Angeles County <br> Super. Ct. No. EC060530) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jan A. Pluim, Judge.  Affirmed.

Mazur & Mazur, Janice R. Mazur; Ronald S. Marks for Defendants and Appellants.

Carman & Mazina, Natallia Mazina for Plaintiff and Respondent.

## INTRODUCTION

Defendant attorney failed to notify his client of an important legal development. Once the parties discovered the error, defendant agreed to pay for any damages that resulted. The client paid the resulting damages more than a year later and then asked defendant to reimburse him, but defendant refused. The client then sued defendant for professional negligence and promissory estoppel. Professional negligence has a one-year statute of limitations and promissory estoppel has a two-year statute of limitations. Following a bench trial, the court below held that the client's three professional negligence causes of action were time-barred, but awarded damages to the client on the promissory estoppel cause of action. On appeal, defendant argues that his promise to pay the client's damages arose out of the provision of professional services and is therefore limited by the professional negligence statute of limitations.

We affirm. Defendant's breach of his professional duties by failing to inform his client of legal developments was separate from his later promise to pay any resulting damages. The client relied on the promise to his detriment by not filing a timely action for professional negligence, and the attorney breached his promise after the statute of limitations for professional negligence had passed. Under the circumstances, the attorney's promise and breach did not arise from the provision of professional services, and the client's action for promissory estoppel was not barred by the statute of limitations in Code of Civil Procedure section 340.6, subdivision (a).

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  *Background*

Plaintiff Prevost Pharmaceutical Enterprises does business as Watts Professional Pharmacy (Watts) in Los Angeles. Pharmacist Walter Prevost (Prevost) is the owner of Watts and is the pharmacist there. The following facts are generally undisputed.

Under California's Medi-Cal program, low-income patients may receive prescription medication from a pharmacy at little or no cost. The pharmacy then bills the California Department of Health Care Services (DHCS) for the dispensed medication, and DHCS reimburses the pharmacy. Watts participated in this program.

2

On August 26, 2009, Watts received a "procedure code limitation" letter from DHCS. A procedure code limitation letter informs a pharmacy that due to billing irregularities or other problems, DHCS will no longer reimburse the pharmacy for dispensing certain medications to Medi-Cal beneficiaries. The August 26 letter addressed two medications: (1) acetaminophen with codeine tablets and (2) promethazine with codeine syrup. The letter also informed Watts that it could appeal to DHCS within 45 days; if it did not appeal within that time period, the limitations barring reimbursement for the two drugs would take effect.

Watts hired defendant Alexander W. Kirkpatrick, an experienced Medi-Cal attorney, to appeal the procedure code limitation letter. On October 9, 2009, Kirkpatrick timely appealed the procedure code limitation letter on behalf of Watts. Because the appeal delayed the effect of the procedure code limitation, Watts continued to dispense the two drugs at issue and receive DHCS reimbursement for those drugs while the appeal was pending.

On July 14, 2010, DHCS issued a final decision letter partially granting and partially denying Watts's appeal. DHCS granted the appeal with respect to promethazine with codeine syrup, meaning that Watts was authorized by DHCS to continue receiving reimbursements from DHCS for that medication. DHCS denied the appeal as to acetaminophen with codeine tablets, meaning that DHCS would no longer reimburse Watts for that medication.

Kirkpatrick received the final decision letter from DHCS. However, Kirkpatrick failed to forward a copy of the letter to Watts or to otherwise inform Watts that the appeal had been denied with respect to acetaminophen with codeine. Kirkpatrick later explained that he failed to send the letter because he assumed DHCS also sent a copy directly to Watts.

Because the appeal was denied with respect to acetaminophen with codeine, DHCS should have stopped reimbursing Watts for those prescriptions. Due to what the parties assume was an oversight, however, DHCS continued to reimburse Watts for those prescriptions. As a result, Watts did not realize the appeal had been denied; Watts

3

continued to dispense acetaminophen with codeine, and DHCS continued to reimburse Watts for those prescriptions.

On September 26, 2011, a DHCS auditor came to Watts for an unrelated inspection. The auditor noticed Watts was being reimbursed for acetaminophen with codeine despite the denial of its appeal, and mentioned it to Prevost during the inspection. This was the first time Watts learned that the appeal had been denied and that the DHCS reimbursements for acetaminophen with codeine between July 2010 to September 2011 were made in error.

Prevost and the inspector together telephoned Kirkpatrick during the September 26 inspection visit. Kirkpatrick acknowledged he had received the final decision letter, but that he did not inform Watts or Prevost about the final decision because he assumed the letter had also been sent to them. Kirkpatrick immediately acknowledged his error and took responsibility for it. He offered to work with DHCS in an attempt to minimize any penalties DHCS might assert against Watts for failing to comply with DHCS's denial of Watts's appeal. Kirkpatrick also offered to pay for any damages caused by his error.

About a month later, Watts informed Kirkpatrick that it was terminating his representation, and asked him to return all client files. In a letter to Watts dated October 24, 2011, Kirkpatrick stated that he was returning Watts's files as requested. He expressed concern that as a result of the termination, he would no longer be able to work with DHCS in an attempt to minimize any penalties DHCS might assess against Watts. Kirkpatrick noted that DHCS had the authority to address the issue in a "punitive manner" by seeking not just repayment of the erroneous reimbursements DHCS paid to Watts, but also assessing fines and penalties for improper billing.

In his October 24 letter, Kirkpatrick noted that Watts's request for its files indicated that Watts might be considering filing a malpractice action against him. He stated, "[W]hile I have malpractice insurance as required by law, I very much doubt you would be able to prove any actual damages resulting from this inadvertent oversight. . . ." Kirkpatrick also reiterated that he had promised to pay any damages: "Of course, if there are any penalties imposed, I would be responsible for them" "I thought, erroneously, that

4

we were on the same page as to my trying to find a good resolution to this problem and paying whatever damages that caused," and "I informed the Department I would be responsible for any overpayments it might claim . . . and I informed you I would take care of the problem."

Sometime in 2012 DHCS informed Watts that it intended to begin the process to recover the improperly paid reimbursements. In December 2012, DHCS billed Watts for the full amount of the overpaid funds. DHCS did not assess any additional fines or penalties against Watts. In a series of payments in late 2012 and early 2013, Watts returned $31,242.33 to DHCS—the amount Watts was improperly reimbursed for acetaminophen with codeine between the effective date of DHCS's denial letter and the date Watts discovered the denial. Prevost then left messages asking Kirkpatrick to reimburse Watts for the payments to DHCS, but Kirkpatrick did not return his calls.

B.    *Watts's allegations against Kirkpatrick.*

On April 26, 2013, Watts sued Kirkpatrick. In the operative complaint, Watts asserted four causes of action. The first two causes of action were straightforward professional negligence claims alleging that Kirkpatrick erred by failing to provide Watts with notice of the final decision. The third cause of action, titled "Breach of Written Acknowledgement of Obligation, Breach of Confidential Relationship," alleged that in the September 26 phone call, Kirkpatrick said he "would be responsible for any financial losses resulting from his error in not sending the DHCS appeal ruling to Watts," and that his October 24, 2011 letter stated the same thing.

The fourth cause of action, the one that is the focus of this appeal, was titled "Legal Malpractice with Estoppel, due to Fraud, from Asserting Defense of Statute of Limitations; and for Damages for Fraud." It alleged that in the September 26, 2011 phone call and in Kirkpatrick's October 24, 2011 letter, Kirkpatrick "intended to induce and lull, and did induce and lull, Watts not to file any malpractice suit against Kirkpatrick for more than one year. . . ." The allegations continued, "Accordingly, as a reason of such aforesaid fraud, deceit, and oppression, [Kirkpatrick is] equitably estopped from asserting the statute of limitations" for professional negligence.

5

C.    *Trial*

The case proceeded to a two-day bench trial; Prevost and Kirkpatrick were the only witnesses. Because the events leading up to the lawsuit were largely undisputed, the focus of the trial was the application of the statute of limitations and the effect of Kirkpatrick's promise to pay the damages. The statute of limitations applicable to professional negligence, Code of Civil Procedure section 340.6, subdivision (a) (section 340.6(a)), states in relevant part, "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services, shall be commenced within one year" after the wrongful act is discovered, unless "(1) [t]he plaintiff has not sustained actual injury." Watts discovered Kirkpatrick had not communicated the results of the final decision letter on September 26, 2011, and Watts filed its complaint on April 26, 2013.

Watts argued that the statute of limitations did not begin to run until late 2012, when DHCS began proceedings to collect the overpaid funds, because only then did a possibility of future injury become actual damages. Kirkpatrick, on the other hand, argued that although the measure of damages was not immediately apparent, the fact of the injury was clear on September 26, 2011, when Watts discovered the outcome of DHCS's final decision. There was almost no question that DHCS would seek recovery of the overpayment, Kirkpatrick testified; the only questions were how much DHCS would seek to recoup and whether DHCS would impose additional penalties. Prevost testified that the amount of the erroneous reimbursements was quantifiable on September 26, the day he discovered the outcome of the final decision.

The trial judge expressed his opinion that Watts's professional negligence causes of action were time-barred. "I think plaintiff was put on notice as of September the 26th in that telephone call that he was going to have to pay something on this overpayment. [¶] And in my view, the statute of limitations began on that date. And certainly . . . after the date of October the 24th, the letter, exhibit 106 could certainly confirm that he knew at that time that the damages may not have been quantifiable, but he was damaged." The

6

trial court therefore held that "[t]he legal malpractice [causes of action] are barred by the one-year statute of limitations."

Throughout trial, however, there was significant confusion about the effect of Kirkpatrick's promise to pay Watts's damages. When the trial court pointed out that such a theory was not included in the complaint because each cause of action was labeled as legal malpractice, Watts's counsel responded that the fourth cause of action included the allegation of a separate promise: "Fraud is -- is unrelated to this legal malpractice. It's not even legal. It's a promise." The court responded, "I know, but you labeled it as legal malpractice due to fraud." Watts's attorney agreed, and the court asked, "Why wouldn't you have alleged, like, promissory estoppel?" Counsel responded, "We do. If you find the statute of limitations did start running, if you find, in September, there's a promissory estoppel and all the elements of promissory estoppel."

The confusion about Watts's allegations persisted throughout the trial. The court observed that Watts's counsel seemed to be asserting several different theories including promissory estoppel, but said, "I don't see that you have alleged that in your complaint." Watts's counsel insisted again that estoppel was included in the fourth cause of action. The court asked, "Please, just tell me, have you alleged breach of promise?" Watts's counsel answered, "We have not. We allege promissory --" The court interrupted, "Have you alleged breach of promissory estoppel [sic]?" Watts's counsel answered, "That's right." Counsel referred the court to the paragraph in Watts's complaint alleging that Kirkpatrick "intended to induce and lull, and did induce and lull, Watts not to file any malpractice suit against Kirkpatrick for more than one year." The court asked, "So you're telling me that the court should interpret the fourth cause of action not really as malpractice, but due to [sic] promissory estoppel?" Counsel responded, "I'm confused on that one. All I was making [sic] an objection for mitigation defense. That's all I was doing."

Prevost testified on behalf of Watts, and said that he relied on Kirkpatrick's promise to pay damages. On cross-examination, Kirkpatrick, representing himself, asked Prevost, "And it's your contention then, that after you terminated me on October 24,

7

2011, there was a promissory estoppel in effect.  You relied on my representation until you got the overpayment notice in November of 2012, around 13 months later.  That's your position?  That my promise to pay and [sic] the overpayment stayed in effect; right?"  Prevost replied, "Yes, I believe that, because it's an absolute promise."

After the close of evidence and before Kirkpatrick's closing argument, the court said that the first three causes of action were time-barred under the statute of limitations for professional negligence.  However, the judge continued, "[t]he fourth cause of action could certainly be construed to include – although it says – even though it says 'legal malpractice due to,' it could be construed as stating a cause of action for equitable estoppel and/or breach of a promise, which is a two-year statute of limitations.  Having said what I've said, the fourth cause of action survives."

Kirkpatrick argued in closing that because Watts's claims for damages necessarily arose out of the professional relationship between Watts and Kirkpatrick, all causes of action should be construed as professional negligence and the one-year statute of limitations should apply.  After closing arguments, the trial court voiced its final order on the record:  "I do believe the statute of limitations, the one-year for legal malpractice as to the first three causes of action has run and they are barred.  [¶]  As to the fourth cause of action, in construing this as promissory estoppel and also including a cause of action for breach of promise, I find that defendant did breach that promise that arose on September 26, 2011.  There were no conditions.  I, therefore, find in favor of the plaintiff . . . .  And I award plaintiff the sum of $31,242.33."

The trial court entered judgment on July 18, 2014.  Kirkpatrick's motion for a new trial was denied.  Kirkpatrick timely appealed.

**DISCUSSION**

Kirkpatrick presents the issue on appeal as follows:  "The one year limitation period set forth in Code of Civil Procedure section 340.6 governs all actions against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services.  Since no fraud exists here, all of plaintiff's claims are barred by the statute of limitations."

8

The one-year statute of limitations in section 340.6(a) "applies to a claim when the merits of the claim will necessarily depend on proof that an attorney violated a professional obligation—that is, an obligation the attorney has by virtue of being an attorney—in the course of providing professional services." (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1229 (*Lee*).) The statute applies based on the conduct alleged, not on how the plaintiff has styled a cause of action. (*Id*. at p. 1236; *Prakashpalan v. Engstrom, Lipscomb and Lack* (2014) 223 Cal.App.4th 1105, 1121; *Cheong Yu Yee v. Cheung* (2013) 220 Cal.App.4th 184, 196; *Vafi v. McCloskey* (2011) 193 Cal.App.4th 874, 880 (*Vafi*).) The question in this case is therefore whether Kirkpatrick's promise to pay Watts's damages was "a professional obligation—that is, an obligation the attorney has by virtue of being an attorney."

The Supreme Court issued its decision in *Lee*, addressing section 340.6(a), while this appeal was pending, and we sought further briefing from the parties to address that case. In *Lee*, the plaintiff alleged that she advanced funds to attorney Hanley to cover attorneys' fees for litigation. Lee further alleged that she terminated Hanley's representation, but he refused to return her unearned fees. (*Lee*, *supra*, 61 Cal.4th at p. 1229.) More than a year after Hanley refused to return the funds, Lee sued Hanley and alleged causes of action for professional negligence and conversion. (*Ibid*.) Hanley demurred to the complaint on the grounds that the causes of action were time-barred by the one-year statute of limitations in section 340.6(a). (*Ibid*.) The question before the Supreme Court was whether Lee's claims should be construed as professional negligence causes of action that were barred by the statute of limitations in section 340.6(a), or whether a different statute of limitations could apply to her conversion cause of action.

The court examined the history of section 340.6(a) and concluded that "the Legislature intended to establish a limitations period that would apply broadly to any claim concerning an attorney's violation of his or her professional obligations in the course of providing professional services regardless of how those claims were styled in the plaintiff's complaint." (*Lee*, *supra*, 61 Cal.4th at p. 1235.) Thus, "the statute applies not only to actions for professional negligence but to any action alleging wrongful

9

conduct, other than actual fraud, arising in the performance of professional services."
(*Id.* at p. 1236.)  The court defined "professional obligation" as "an obligation that an attorney has by virtue of being an attorney, such as fiduciary obligations, the obligation to perform competently, the obligation to perform the services contemplated in a legal services contract into which an attorney has entered, and the obligations embodied in the . . . Rules of Professional Conduct."  (*Id.* at p. 1237.)

The court reversed the judgment sustaining Hanley's demurrer because "Lee's complaint may be construed to allege that Hanley is liable for conversion for simply refusing to return an identifiable sum of Lee's money.  Thus, at least one of Lee's claims does not necessarily depend on proof that Hanley violated a professional obligation in the course of providing professional services."  (*Lee*, *supra*, 61 Cal.4th at p. 1240.)  The court remanded for further proceedings, because based on the allegations in the complaint it was unclear whether the conversion arose in the course of Hanley's provision of professional services.  "If, for example, Lee's claim turns out to hinge on proof that Hanley kept her money pursuant to an unconscionable fee agreement (Rules of Prof. Conduct, rule 4-200) or that Hanley did not properly preserve client funds (*id.*, rule 4-100), her claim may be barred by section 340.6(a).  At this stage, however, without any development of the facts, we cannot conclude that section 340.6(a) necessarily bars Lee's claim."  (*Lee*, *supra*, 61 Cal.4th at p. 1240.)

Here, by contrast, we have a fully developed record following a trial and the relevant facts are not disputed.  The parties agree that Kirkpatrick's professional negligence occurred in July 2010 when he received the final decision letter but failed to inform Watts about it.  The parties also agree that once they discovered Kirkpatrick's error on September 26, 2011, Kirkpatrick promised to pay for the damages caused by his negligence.  In addition, there is no dispute that after Watts paid DHCS in late 2012 and early 2013, Kirkpatrick refused to reimburse Watts.

Based on these facts, the court did not err by finding that Kirkpatrick's promise was made outside the scope of his professional obligations as Watts's attorney.  A promise to pay damages that misleads a party into believing that he need not file a lawsuit

10

to recoup his losses is not an obligation that an attorney has by virtue of being an attorney. Rather, the elements of promissory estoppel are broad and general: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." (*Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 411, 416.) Indeed, estoppel can arise in a variety of non-attorney contexts where one party's breach induces the other party's detrimental reliance. (See, e.g., *Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 384 [equitable estoppel may bar a statute of limitations defense in a construction defect case where a defendant promises to repair the defects and then breaches that promise after the statute of limitations expires]; *Union Oil Co. of California v. Greka Energy Corp.* (2008) 165 Cal.App.4th 129, 138 in a contract action, ["Defendants who induce plaintiffs not to sue pending settlement, as here, may not assert a statute of limitations defense where their conduct caused the untimely filing of the action."]; *Vu v. Prudential Property & Casualty Ins. Co.* (2001) 26 Cal.4th 1142, 1152 [in an insurance case, the defendant insurance company could be equitably estopped from raising a statute of limitations defense if the plaintiff could show he reasonably relied on the insurance company's misrepresentation about the scope of insurance coverage].)[1]

In determining the scope of a cause of action, courts look to "[t]he principal purpose or 'gravamen' of the action, rather than the form of action or the relief demanded. . . ." (*Vafi*, *supra*, 193 Cal.App.4th at 880.) "The nature of the cause of action and the primary right involved, not the form or label of the cause of action or the relief demanded, determine which statute of limitations applies." (*Carter v. Prime Healthcare Paradise Valley LLC* (2011) 198 Cal.App.4th 396, 412.) The primary right theory

---

[1] These cases are somewhat distinguishable in that they are based on equitable estoppel rather than promissory estoppel. "The equitable estoppel doctrine acts defensively only. Thus, there is no stand-alone cause of action for equitable estoppel as a matter of law." (*Joffe v. City of Huntington Park* (2011) 201 Cal.App.4th 492, 513, fn. 15.) Here, because the trial court found that Kirkpatrick's breach of his promise to pay occurred outside the scope of his representation of Watts, promissory estoppel applied.

11

"provides that a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty.  [Citation.]  The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681.)  Therefore, "[e]ven where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief. . . .  Thus, under the primary rights theory, the determinative factor is the harm suffered." (*Boeken v. Philip Morris USA, Inc*. (2010) 48 Cal.4th 788, 798.)

Here, the primary rights involved in professional negligence and promissory estoppel are different.  As Watts's attorney, Kirkpatrick had a duty to keep Watts apprised of legal developments in his DHCS appeal.  He breached that duty in July 2010 when he failed to inform Watts of DHCS's final decision.  Kirkpatrick then promised in September 2011 to pay for all resulting damages, but when Watts sought reimbursement from Kirkpatrick in late 2012 or early 2013—after the statute of limitations on a professional negligence claim had already passed—Kirkpatrick breached the duty his promise created by refusing to pay Watts for its damages.  Kirkpatrick's July 2010 breach of his professional duty to keep Watts informed was separate from the 2012 or 2013 breach of his promise to pay for the damages.[2]

Moreover, substantial evidence supports the trial court's finding that promissory estoppel occurred.  "'Substantial evidence' is evidence of ponderable legal significance,

_____

[2] At oral argument, Kirkpatrick also argued that we should reverse because Watts did not sustain any damages. As a result of DHCS's denial of the appeal, Kirkpatrick argued, Watts was "not entitled to fill these prescriptions or bill Medi-Cal for them in the first place."  In other words, because Watts was not entitled to the overpayments, it was not damaged by the requirement that he had to return the overpayments.  But this argument ignores the reality that Watts dispensed the prescriptions over a period of many months with the expectation that he would be paid Medi-Cal rates for them, and he did so as a direct result of Kirkpatrick's negligence. Kirkpatrick's position therefore boils down to an argument that Watts should bear the brunt of Kirkpatrick's error.  This argument is unavailing.

evidence that is reasonable, credible and of solid value." (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651.) "The testimony of one witness may provide substantial evidence." (*Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 767-768.) Both parties testified that Kirkpatrick promised to pay Watts's damages and later refused to reimburse Watts. Prevost testified that he relied on the promise. This evidence is sufficient to prove promissory estoppel.

Ultimately, promissory estoppel is a doctrine of fairness. "In California, under the doctrine of promissory estoppel, 'A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.' (Rest.2d Contracts, § 90, subd. (1), p. 242; see *C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 6, 151 Cal.Rptr. 323, 587 P.2d 1136 [§ 90 'has been judicially adopted in California'].)" (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transp. Authority* (2000) 23 Cal.4th 305, 310.) "Because promissory estoppel is an equitable doctrine to allow enforcement of a promise that would otherwise be unenforceable, courts are given wide discretion in its application." (*U.S. Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 902.)

Here, Kirkpatrick promised to pay Watts's damages. Long after his representation of Watts had ended and after the statute of limitations on professional negligence expired, Kirkpatrick breached that promise. Justice requires a remedy for that breach, which was wholly separate from Kirkpatrick's failure to send Watts the final decision letter in 2010. The trial court did not err by finding that the promissory estoppel cause of action was not barred by the statute of limitations in section 340.6(a).

**DISPOSITION**

The judgment is affirmed. Prevost is to recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


WILLHITE, Acting P. J.


MANELLA, J.

14