Filed 11/8/21  Scofield v. Hanson Bridgett LLP  CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| SHARON SCOFIELD, Individually and as Trustee, etc., | C081115 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2012-00124071-CU-MC-GDS) |
| v. | |
| HANSON BRIDGETT LLP, | |
| Defendant and Respondent. | |

Plaintiff Sharon Scofield, individually and as trustee of the Sharon Scofield Family Trust and trustee of the Alice Scofield Family Trust (Scofield), brought suit against various individuals and entities including defendant Hanson Bridgett LLP (Hanson Bridgett), in the aftermath of a series of investments gone wrong. The trial court granted Hanson Bridgett's motion for summary judgment, finding the claims against it

1

barred by the statute of limitations in Code of Civil Procedure section 340.6.[1]  Scofield appeals, arguing the trial court applied the wrong statute of limitations and erred in overruling Scofield's evidentiary objections and excluding her proffered evidence.  We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

This appeal involves a plethora of actors, investments, disagreements, and litigation.  We shall endeavor to provide a brief, clear picture of the background giving rise to Scofield's amended complaint and Hanson Bridgett's motion for summary judgment.  Because the statute of limitations is the main point of contention, we pay special attention to the timing of the various actions.

Scofield, an elementary school teacher, was 50 in 2003 and living with her 85-year-old mother, Alice Scofield (Alice).

**2003 and Hammer Lane**

In 1999, Scofield and her mother, Alice hired Jugjit (Jack) Johal to represent them as the family lawyer in estate planning.  Johal was a partner in the Trainor Robertson law firm.  In early 2003, Johal became a partner at Hanson Bridgett and continued to represent both mother and daughter.

In June 2003, Richard Samra retained Johal to form a limited partnership, Hammer Lane R.V. & Mini Storage (Hammer Lane).  Hammer Lane would own and operate a mini-storage facility.  Johal drafted Hammer Lane's formation documents for Hammer Lane Management, LLC (HLM), which became Hammer Lane's general partner.

HLM had two members who both invested as limited partners:  Samra and Bernard Kooyman.  Both later transferred their membership interests in HLM to family

---

[1]  All further statutory references are to the Code of Civil Procedure unless otherwise designated.

trusts. Hammer Lane's partnership agreement and HLM's operating agreement listed Hanson Bridgett as counsel.

Johal invested $50,000 in Hammer Lane through a family-owned limited partnership, Panakosta Partners, LP. When Johal entered the formation of Hammer Lane and HLM in the Hanson Bridgett system, he failed to disclose he was an investor.

Subsequently, Johal introduced Samra and Kooyman to Alice. Alice wanted to invest her one-quarter share of the proceeds from the sale of the family ranch. Johal advised Alice, then in her 80s, to roll over a portion of the proceeds from the sale of her parent's ranch into another investment through an Internal Revenue Code section 1031 exchange. The plan was not only to shelter the sale proceeds from taxes but also to provide income for Scofield, which would allow her to retire and care for her mother. Johal did not open a new client matter for Alice or check for conflicts before advising her to invest in Hammer Lane.

Scofield, Alice, and their accountant participated in the decision to invest in Hammer Lane. According to Scofield, Johal, Samra, and a fourth investor, Mark Zimmerman, told Alice and Scofield that within "18 to 24 months, there would be cash flow, a positive cash flow, from the Hammer Lane investment payable to [Alice] or her trust." The return was guaranteed to be an annual cash flow of at least 18 percent, to begin no later than June 2005. Samra, Zimmerman, and Johal told Scofield and Alice that Hammer Lane was a long-term investment and the trio would help them throughout the duration of the investment.

Scofield gave her uncle the details of the Hammer Lane investment. Her uncle consulted with local developers who determined the project was too big and would not be profitable in the short term. Scofield and Alice nevertheless agreed to invest. On August 21, 2003, Alice, in her capacity as trustee of the Alice Scofield Family Trust, agreed to invest $1 million in Hammer Lane.

3

**2004 and Twin Cities**

In 2004, Samra retained Johal and Hanson Bridgett to form Twin Cities Investments, LP (Twin Cities), a real estate partnership. Twin Cities' sole asset was 25 acres of undeveloped land. Hanson Bridgett opened three client matters on behalf of Samra with respect to Twin Cities: purchase of real property, forming the limited liability company as the general partner for the partnership, and forming the partnership itself.

Johal invited Alice to invest in Twin Cities, telling her the partnership would generate $20,000 to $22,000 a month in three to five years. Through her trust, Alice invested $1 million into Twin Cities through two Internal Revenue Code section 1031 exchanges prepared by Johal. It is undisputed Twin Cities never yielded any return on the original investment.

Hanson Bridgett ran a customary conflict check at the time of Alice's investment in Twin Cities, but did not identify any existing conflict of interest. Subsequently Hanson Bridgett discovered that Johal would have a personal interest in the matter. The firm directed Johal to obtain the necessary disclosures of conflict of interest and related waivers. However, unbeknownst to Hanson Bridgett, Johal did not provide the disclosures to Alice or obtain a conflict of interest waiver.

**2006**

In 2006, through a series of transfers, Alice's trust conveyed its interest in Hammer Lane to the Sharon Scofield Family Trust and withdrew from the partnership. Also in 2006, Samra told Scofield that Hammer Lane would not be sold until it reached its full potential. According to Samra, Hammer Lane would provide an income for Scofield to stay home and care for Alice.

4

**2008 Things Fall Apart**

By 2008, Hammer Lane had not yielded any return to the limited partners. In March 2008, Johal asked Scofield for more money. Scofield gave Johal a check for $150,000 payable to Hanson Bridgett. The funds were to be used for a possible loan to Hammer Lane, at Johal's discretion. Johal deposited the check in to the Hanson Bridgett client trust account.

On May 2, 2008, Samra advised the Hammer Lane partners in a letter that the partnership was in financial distress and was unable to secure additional financing. Samra told the partners, including Scofield, that the facility might have to be sold. Scofield feared that if Hammer Lane was sold, she would lose her entire investment that Alice originally made and that the tax consequences would be significant. Scofield called Samra and reminded him of his commitment that the Hammer Lane investment would provide income for her to stay home and care for Alice. Scofield asked why this information was coming out now and noted she had never received financial statements.

On May 5, 2008, Scofield sent Johal an e-mail expressing her anger over Samra's letter, stating Samra was not honest and he would have a fight on his hands if he tried to sell Hammer Lane. Scofield stated she wanted Samra out of the business and that she "should have had [a] meeting as to where and what was going on all along." Scofield believed Samra "could be liable for all that." Scofield asked: "Shall I wheel my mother into a court room and say to a judge that she was counting on this so I could retire and take care of her. I honestly do not think there would be too much sympathy for him do you? Jack let me put it to you bluntly I am taking names and kicking ass and if he does not like it and you do not want to go up against him, I will find the attorney that does."

In response to the concerns of the partners over the proposed sale, Johal formed a new company called HLMS, LLC in August 2008 to take over as Hammer Lane's general partner. On August 22, 2008, the limited partners, including Scofield, executed a written consent of limited partners to remove HLM as Hammer Lane's general partner.

The written consent included spaces for the signatures of all the limited partners, including Panakosta Partners, LP, which was Johal's own limited partnership. Since Samra refused to sign a conflict waiver, neither Johal nor Hanson Bridgett could represent the Hammer Lane partners. Instead, Johal arranged for attorney Douglas Winter to represent the limited partners until other counsel could be obtained.

On September 10, 2008, Samra's counsel wrote to Johal contesting the actions by Hammer Lane's partners to remove HLM as general partner and arguing Johal had a conflict of interest. The letter was copied to all Hammer Lane partners, including Scofield.

Subsequently, on September 25, 2008, HLM, through Samra, filed suit against Hammer Lane's limited partners seeking dissolution of the partnership. Scofield admitted she knew at the time the suit was filed that she had been sued as a result of Johal's advice on the removal of HLM as Hammer Lane's general partner.

While the suit was pending, independent attorney James Geary, then associated with the law firm Hunter Richey & Eisenbeis, assumed representation of the limited partnership members. On December 1, 2008, Geary joined Hanson Bridgett. A Hanson Bridgett conflict check revealed Geary's representation of Hammer Lane, Scofield and the other limited partners, who were adverse to Samra, a former client. Hanson Bridgett told Geary and Johal that the representation of Hammer Lane could not be transferred with Geary's new employment at the firm due to a conflict of interest. Johal told Hanson Bridgett that the suit would be sent to another firm. The partnership lawsuit was never opened as a firm matter at Hanson Bridgett.

**2009 Changing Law Firms**

On March 27, 2009, Scofield and the other Hammer Lane limited partners executed a substitution of attorney, substituting CVM Law Group (CVM) as their counsel of record in place of Hunter Richey & Eisenbeis. In June 2009, Johal left Hanson

Bridgett and joined CVM. Alice and Scofield requested that Hanson Bridgett transfer their client files to CVM. It is undisputed that Hanson Bridgett did not provide any further legal services to Scofield and Alice after July 25, 2009.

**2010 Warning of Potential Claims and Tolling Agreement**

On June 10, 2010, CVM attorney Robert Collins informed Scofield and the other limited partners in a letter that they might have claims against both Johal and Hanson Bridgett. He suggested they seek independent counsel.

Collins contacted the limited partners, including Scofield, again on August 4, 2010. Collins reiterated his advice that they might have claims against Johal and Hanson Bridgett and stated that other limited partners had obtained a tolling agreement. He urged the remaining limited partners to consult with counsel to obtain a similar tolling agreement. The letter stated: "I offer you no specific advice. I will tell you there is an argument that the statute will run out soon on each of your claims [against Johal and/or Hanson Bridgett] and that it would be prudent for you to consult with other counsel on this matter very soon to determine the best course of action for each of you." Scofield forwarded the letter to Deborah Lee, who was her counsel for financial interests.

Alice passed away on October 13, 2010. On October 15, 2010, Lee contacted Hanson Bridgett and Johal and obtained a six-month tolling agreement from August 13, 2010, through February 12, 2011. The tolling agreement did not toll or revive any claims that were already barred by the applicable statute of limitations. It did not pertain to any claim connected with Twin Cities.

**2012 Second Tolling Agreement, Complaint, and First Amended Complaint**

Following expiration of the tolling agreement in February 2011, Scofield waited a full year to seek another tolling agreement. The second tolling agreement was for 90 days and expired on May 12, 2012. As with the first, the tolling agreement did not toll or revive claims already barred by the statute of limitations.

7

On May 10, 2012, Scofield filed a complaint against Johal, CVM, and other parties to the Hammer Lane and Twin Cities transactions. Scofield did not name Hanson Bridgett as a defendant. Instead, the complaint alleged various claims against Hanson Bridgett had been "lost due to passage of time, which claims [Scofield was] therefore unable to plead in this action." According to the complaint, Johal and CVM had failed to advise Scofield regarding various claims against Hanson Bridgett and Johal.

On December 31, 2012, Scofield filed an amended complaint naming Hanson Bridgett and alleging causes of action for legal malpractice and breach of fiduciary duty.

**2014 Summary Judgment and Trial Court's Order**

In May 2014, Scofield amended the complaint to add a new claim for financial elder abuse against Hanson Bridgett and other defendants. The complaint again alleged Johal, CVM and others were responsible for allowing "various meritorious claims . . . against . . . Hanson Bridgett" to lapse.

In November 2014, Hanson Bridgett moved for summary judgment. The trial court granted the motion.

The court began by noting that section 340.6, subdivision (a) (hereafter section 340.6(a)), the statute of limitations for legal malpractice, imposes a one-year statute of limitations for all claims except for actual fraud. The court found: "It is undisputed between the parties, and admitted by Plaintiffs at the time of the hearing on this Motion, that any alleged act or omission by Hanson Bridgett arises out of the provision of Hanson Bridgett's provision of legal services to Plaintiffs and therefore is subject to the one-year statute of limitations of CCP § 340.6. Plaintiffs filed their original Complaint in this action on May 10, 2012. It is undisputed that, in the original Complaint, Plaintiffs did not name Hanson Bridgett as a Defendant and, in fact, averred that, as a result of malpractice by CVM in failing to properly advise them of potential claims they had against Johal and Hanson Bridgett, Plaintiffs were time-barred from pursuing those claims."

8

The court reiterated that Scofield admitted she knew in September 2008 that her inclusion in the partnership lawsuit was the result of Johal's actions while he was employed by Hanson Bridgett. The termination of Hanson Bridgett's professional representation of Scofield regarding Hammer Lane occurred on March 27, 2009, when representation of Hammer Lane was transferred to CVM. The termination of representation of Scofield regarding Twin Cities previously occurred on June 30, 2009, when Johal resigned from Hanson Bridgett. "Nevertheless, giving Plaintiffs the benefit of every doubt, the Court concludes that, *at the very latest*, the statute of limitations began running as to all of Plaintiffs' claims against Hanson Bridgett on June 10, 2010, when Mr. Collins informed Plaintiffs and the other limited partners that they should seek the advice of outside counsel regarding potential claims against Hanson Bridgett and Johal. Collins repeated his advice in August 2010, warning Plaintiffs that the applicable statute of limitations was close to running and advised them to investigate a tolling agreement."

The court noted the tolling agreement did not apply to any claims related to Twin Cities. The court concluded: "Based on these facts, and applying the tolling agreement most liberally in Plaintiffs' favor, the Court concludes that the statute of limitations ran on all claims against Hanson Bridgett on December 10, 2011. Since Plaintiffs did not file their original complaint until May 2012, their claims were time-barred by § 340.6(a)."

In addition, the court considered Scofield's argument that the one-year limitations period did not apply because she alleged fraudulent conduct against Hanson Bridgett. The court reviewed the amended complaint and determined Scofield pled only legal malpractice, breach of fiduciary duty, and elder abuse against Hanson Bridgett.

The court also discussed Scofield's claim that the summary judgment motion applied only to her as an individual and determined: "Thus, whether acting on her own behalf or on behalf of her mother's trust or estate, Sharon had clear responsibilities and legal duties to pursue claims pertaining to trust or estate assets when she had notice of

9

them.  As explained above, the statute of limitations commenced running as to the [Hammer Lane] claims in March 2009, after Sharon Scofield knew she had sustained harm in May 2008 after being sued by Samra, and upon transfer of the [Hammer Lane] cases to different counsel.  Similarly, it is undisputed that Alice Scofield made a significant monetary investment into the Twin Cities venture in September 2004, with a promise that sizeable returns would be realized within five years; it also is undisputed that Plaintiffs never received any monetary returns from Twin Cities investment – a fact which, in light of Plaintiffs' other purported dealings with Defendants in this case, should reasonably have placed Plaintiffs on notice to investigate potential claims against the various players, including Hanson Bridgett.  For these reasons, the Court concludes that the statute of limitations in § 340.6 serves to bar all claims of all Plaintiffs against Hanson Bridgett in this case."

The court considered the nature of Scofield's claims and determined:  "In sum, the claims against Hanson Bridgett, regardless of the legal theory that Plaintiffs assign, are malpractice claims.  [Citation.]  While Plaintiffs may allege a financial elder abuse claim against Hanson Bridgett, the substance of their allegations and the undisputed facts establish it is premised on nothing more than the age of Alice Scofield, not the purported conduct at issue; the claims against Hanson Bridgett are, at their core, malpractice claims arising out of its provision of legal services to Plaintiffs, and exist only by virtue of Hanson Bridgett's position as Plaintiffs' legal counsel and the professional duties attendant thereto."

Following entry of judgment, Scofield filed a timely notice of appeal.

# DISCUSSION[2]

## I

### *Standard of Review*

A motion for summary judgment must be granted if the submitted papers show there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 844.) The moving party, whether plaintiff or defendant, initially bears the burden of making a "prima facie showing of the nonexistence of any genuine issue of material fact." (*Id.* at p. 845.) "A prima facie showing is one that is sufficient to support the position of the party in question." (*Id.* at p. 851.) "Thus, if a plaintiff who would bear the burden of proof by a preponderance of the evidence at trial moves for summary judgment, he must present evidence that would require a reasonable trier of fact to find any underlying fact more likely than not—otherwise, he would not be entitled to judgment as a matter of law, but would have to present his evidence to a trier of fact." (*Ibid.*, italics omitted.) Once the moving party has met its burden, the burden shifts to the opposing party to show the existence of a triable issue of material fact. (§ 437c, subds. (a), (p)(2).)

We review de novo the record and the determination of the trial court. First, we identify the issues raised by the pleadings, since it is these allegations to which the motion must respond. Second, we determine whether the moving party's showing has established facts negating the opponent's claims and justifying a judgment in the moving party's favor. When a summary judgment motion prima facie justifies a judgment, the final step is to determine whether the opposition demonstrates the existence of a triable

---

[2] Hanson Bridgett and Scofield filed individual requests for judicial notice of legislative history materials and a prior decision of this court. We deferred ruling on the requests, to which no objections were filed. We grant the requests.

11

issue of fact. (*Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1067; *Barclay v. Jesse M. Lange Distributor, Inc.* (2005) 129 Cal.App.4th 281, 290.)

## II

### *Statute of Limitations*

**Financial Elder Abuse**

According to Scofield, "The question presented in this section is no less monumental than this: Are lawyers exempt from equal responsibility for financial elder abuse? Do they get a statute-of-limitations pass when they abuse elders?" Scofield argues the trial court erred in refusing to apply the four-year statute of limitations in Welfare and Institutions Code section 15657.7 to the complaint's causes of action for financial elder abuse.

In 2003 and 2004, when Alice invested in Hammer Lane and Twin Cities, the financial elder abuse statute stated, in part: "(a) Financial abuse of an elder . . . occurs when a person or entity does any of the following: [¶] (1) Takes, secretes, appropriates, or retains real or personal property of an elder . . . to a wrongful use or with intent to defraud, or both. [¶] (2) Assists in taking, secreting, appropriating, or retaining real or personal property of an elder . . . to a wrongful use or with intent to defraud, or both." (Former Welf. & Inst. Code, § 15610.30, subd. (a)(1) & (2).)

Under the statute, a wrongful use includes taking any of these action in bad faith. (Former Welf. & Inst. Code, § 15610.30, subd. (b).) An elder is any person 65 years or older. Welfare and Institutions Code section 15657.7 states: "An action for damages . . . for financial abuse of an elder . . . shall be commenced within four years after the plaintiff discovers or, through the exercise of reasonable diligence should have discovered, the facts constituting the financial abuse."

Here, the trial court considered Scofield's claims of elder abuse and found the substance of the allegations and undisputed facts established that these claims were

12

premised only on Alice's age, not on the conduct at issue. The claims, at their core, alleged only malpractice against Hanson Bridgett stemming from their legal representation of Scofield. Therefore, section 340.6 provided the applicable statute of limitations.

Section 340.6(a) provides: "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission . . . ."

Both parties cleave to the Supreme Court's decision in *Lee v. Hanley* (2015) 61 Cal.4th 1225 (*Lee*). Hanson Bridgett argues *Lee* supports imposition of section 340.6(a); Scofield argues *Lee* mandates imposition of Welfare and Institutions Code section 15657.7.

In *Lee*, the plaintiff brought an action against her attorney alleging the attorney failed to return unearned attorney fees after she terminated the attorney-client relationship. The attorney demurred, arguing the suit was barred by section 340.6(a). The trial court sustained the demurrer with leave to amend. After the plaintiff failed to amend her complaint, the court dismissed the action. (*Lee, supra*, 61 Cal.4th at p. 1229.) On appeal, the court determined the complaint could be construed to advance a claim for conversion, and a claim for conversion is not relevantly different from a claim for garden-variety theft. Therefore, section 340.6(a) might not bar the suit and the appellate court reversed. (*Lee*, at p. 1232.)

The Supreme Court began by considering the language of section 340.6(a) covering "a wrongful act or omission, other than for actual fraud, arising in the performance of professional services." The court found the statutory text did not by itself make clear whether the phrase "arising in the performance of professional services" limits the scope of section 340.6(a) to legal malpractice claims or covers a broader range

13

of wrongful acts or omissions that might arise during the attorney-client relationship. This ambiguity led the court to examine the purpose of the statute and the legislative history. (*Lee, supra*, 61 Cal.4th at p 1233.)

The Legislature enacted section 340.6(a) in response to rising legal malpractice premiums, stemming partly from the uncertainty surrounding the applicable limitations period for claims of legal malpractice. Prior to section 340.6(a), malpractice lawsuits were subject to different limitations periods depending on the form of the action contained in a plaintiff's complaint. (*Lee, supra*, 61 Cal.4th at pp. 1233-1234.) Its review of the legislative history led the court to two conclusions. First, the Legislature enacted the statute so that the applicable limitations period for such claims would turn on the conduct alleged and ultimately proven, not the way the complaint was styled. (*Id.* at p. 1236.) Second, the statute was designed to apply not only to actions involving professional negligence but to any action alleging wrongful conduct, other than actual fraud, arising in the performance of professional services. (*Ibid.*)

Ultimately the court found "section 340.6(a)'s time bar applies to claims whose merits necessarily depend on proof that an attorney violated a professional obligation in the course of providing professional services. In this context, a 'professional obligation' is an obligation that an attorney has by virtue of being an attorney, such as fiduciary obligations, the obligation to perform competently, the obligation to perform the services contemplated in a legal services contract into which an attorney has entered, and the obligations embodied in the State Bar Rules of Professional Conduct. By contrast, as the Court of Appeal observed, section 340.6(a) does not bar a claim for wrongdoing—for example, garden-variety theft—that does not require proof that the attorney has violated a professional obligation, even if the theft occurs while the attorney and the victim are discussing the victim's legal affairs. Section 340.6(a) also does not bar a claim arising from an attorney's performance of services that are not 'professional services,' meaning 'services performed by an attorney which can be judged against the skill, prudence and

14

diligence commonly possessed by other attorneys.' [Citation.]" (*Lee, supra*, 61 Cal.4th at pp. 1236-1237.)

The court further clarified its reasoning: "Misconduct does not 'aris[e] in' the performance of professional services for purposes of section 340.6(a) merely because it occurs during the period of legal representation or because the representation brought the parties together and thus provided the attorney the opportunity to engage in the misconduct. To hold otherwise would imply that section 340.6(a) bars claims unrelated to the Legislature's purposes in enacting section 340.6(a)—for example, claims that an attorney stole from or sexually battered a client while the attorney was providing legal advice. Nor does section 340.6(a) necessarily apply whenever a plaintiff's allegations, if true, would entail a violation of an attorney's professional obligations. The obligations that an attorney has by virtue of being an attorney are varied and often overlap with obligations that all persons subject to California's laws have. For example, everyone has an obligation not to sexually batter others [citation], but attorneys also have a professional obligation not to do so in the particular context of the attorney-client relationship [citation]. For purposes of section 340.6(a), the question is not simply whether a claim alleges misconduct that entails the violation of a professional obligation. Rather, the question is whether the claim, in order to succeed, necessarily depends on proof that an attorney violated a professional obligation as opposed to some generally applicable nonprofessional obligation." (*Lee, supra*, 61 Cal.4th at p. 1238.)

Our review of Scofield's complaint reveals the causes of action against Hanson Bridgett are based on the firm's professional services provided to Scofield and Alice. The complaint refers to Hanson Bridgett as the duo's attorney, providing legal advice, counsel and recommendations. Similarly, Scofield's brief focuses on Hanson Bridgett's representation of Alice and Scofield, alleging causes of action based on violations of rules of professional responsibility and professional conduct. As the trial court noted, Scofield's claims are malpractice claims arising out of the firm's provision of legal

15

services to Alice and Scofield. We agree with the trial court's assessment that, while Scofield may allege a financial elder abuse claim, "the undisputed facts establish it is premised on nothing more than the age of Alice Scofield, not the purported conduct at issue."

**Actual Fraud Exception**

In the alternative, for the first time on appeal, Scofield argues the complaint pleads actual fraud claims against Hanson Bridgett, which are exempt from section 340.6 and, instead, are subject to the three-year statute of limitations under section 338, subdivision (d). Scofield asserts section 338, subdivision (d) applies to the claims against Hanson Bridgett for intentional breach of fiduciary duty. Scofield also contends the claims of misrepresentation and concealment against Hanson Bridgett invoke section 338, subdivision (d).

Scofield's breach of fiduciary duty causes of action arise out of the attorney-client relationship between Johal and Alice and Scofield. However, as the *Lee* court found, "the Legislature intended to establish a limitations period that would apply broadly to any claim concerning an attorney's violation of his or her professional obligations in the course of providing professional services regardless of how those claims were styled in the plaintiff's complaint." (*Lee, supra*, 61 Cal.4th at p. 1235.)

In *Stoll v. Superior Court* (1992) 9 Cal.App.4th 1362 (*Stoll*), the appellate court found section 340.6 applied to a cause of action against an attorney for breach of fiduciary duty. In *Stoll*, an attorney with experience in the snow skiing industry was hired by a corporation to help acquire a ski property. The attorney failed to disclose that he had already entered into a finder's fee agreement with the owner of a ski resort. The attorney successfully encouraged the corporation to acquire the resort. After the attorney requested his finder's fee, the original owner notified the corporation. Three years later, the attorney recouped the finder's fee through litigation. The corporation then filed an

action against the attorney for breach of fiduciary duty. The attorney demurred to the complaint, arguing the one-year statute of limitation under section 340.6 barred the action. The appellate court agreed. (*Id.* at pp. 1364-1366.)

The *Stoll* court reiterated that section 340.6 establishes a one-year statute of limitations for any legal malpractice short of actual fraud. Although the attorney failed to disclose the adverse interest prior to the inception of the attorney-client relationship, the attorney's duty to disclose continued through the relationship with the corporation. The corporation had knowledge of facts constituting the breach of fiduciary duty more than one year before the filing of the action. (*Stoll, supra*, 9 Cal.App.4th at pp. 1368-1369 & fn. 3.) To hold otherwise, the *Stoll* court reasoned, would disregard the intent of the Legislature. (*Id.* at p. 1368.)

Scofield also strives to invoke the fraud exception to section 340.6 to her claims of misrepresentation and concealment by Hanson Bridgett. However, our review of Scofield's complaint does not reveal any allegations of fraud to support an invocation of the exception to section 340.6.

Scofield accuses the trial court of disregarding the fraud claim because she had "not labeled or entitled all her claims against [Hanson Bridgett] with the rubber stamp 'Fraud.' " We disagree. Scofield alleged two causes of action for fraud but neither cause of action lists Hanson Bridgett as a defendant. On appeal, Scofield argues the complaint alleged claims for misrepresentation and concealment against Hanson Bridgett which invoke the fraud exception in section 340.6. Tellingly, Scofield fails to identify any cause of action which alleges fraud based on misrepresentation and concealment against Hanson Bridgett.

17

**Tolling of the Statute**

Scofield, in the reply brief argues the one-year of statute of limitation under section 340.6 began to run on October 2012 and therefore the complaint was timely. Again, we disagree.

The one-year period under section 340.6 commences when the plaintiff discovers or through the use of reasonable diligence should have discovered the facts constituting the wrongful act or omission. (§ 340.6(a).) We assess the plaintiff's knowledge based on whether the plaintiff has notice or information of circumstances to put a reasonable person on notice. (*Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 818.) The one-year limitations period is triggered by the plaintiff's discovery of the facts constituting the wrongful act, not by the discovery that these facts constitute professional negligence. Once the plaintiff is on inquiry notice, the plaintiff is deemed to know what could be learned through investigation and pursuit of legal remedies. (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 685.)

The trial court found, giving Scofield the benefit of every doubt, that at the very latest, the statute of limitations against Hanson Bridgett began to run on June 10, 2010, when attorney Collins of CVM warned Scofield and the other limited partners that they should seek advice of outside counsel regarding potential claims against Hanson Bridgett and Johal. We agree. Collins repeated this advice in August 2010 warning Scofield that the applicable statute of limitations was running and advising her to investigate a tolling agreement. The first tolling agreement entered into by Scofield on October 15, 2010, states: "Scofield has asserted that she may have a potential claim against Hanson and/or Johal arising out of Scofield's interest in Hammer Lane R.V. & Mini Storage L.P. . . . or the related [partnership] litigation." Scofield filed her original complaint in May 2012 and the first amended complaint naming Hanson Bridgett as a defendant in December

18

2012. The trial court correctly found the statute of limitations had run on Scofield's claims.

## III

### *Evidentiary Rulings*

Finally, Scofield takes the trial court to task for overruling evidentiary objections, arguing the court committed prejudicial error. In overruling Scofield's objections, the trial court found they failed to comply with the mandatory formatting requirements specified in California Rules of Court, rule 3.1354 (hereafter Rule 3.1354).

We review the court's evidentiary rulings for an abuse of discretion. A court does not abuse its discretion in holding a party to the mandatory formatting requirements or in declining to give a party a second chance to file properly formatted objections. (*Hodjat v. State Farm Mutual Automobile Ins. Co.* (2012) 211 Cal.App.4th 1, 8-9.)[3]

Rule 3.1354(b) dictates the format for evidentiary objections: "All written objections to evidence must be served and filed separately from the other papers in support of or in opposition to the motion. Objections on specific evidence must be referenced by the objection number in the right column of a separate statement in opposition or reply to a motion, but the objections must not be restated or reargued in the separate statement. Each written objection must be numbered consecutively and must: [¶] (1) Identify the name of the document in which the specific material objected to is located; [¶] (2) State the exhibit, title, page and line number of the material objected to; [¶] (3) Quote or set forth the objectionable statement or material; and [¶] (4) State the

---

[3] Scofield argues we review the trial court's evidentiary rulings de novo. Scofield cites *Reid v. Google, Inc.* (2010) 50 Cal.4th 512. In *Reid*, the Supreme Court applied de novo review to evidentiary objections made at summary judgment, but not ruled upon by the trial court and which the prevailing party expressly invited the court to consider. (*Id.* at p. 535.) Neither situation exists in this case.

19

grounds for each objection to that statement or material." Rule 3.1354(c) requires a proposed order for the court to rule on each objection.

The trial court found Scofield's objections failed to comply with Rule 3.1354(b) and stated "the Court does not believe that review of the objections would change the outcome of the Court's ruling on the Motion. The Court notes that it has not considered any additional evidence filed by Defendant in conjunction with Defendant's Reply to Plaintiff's Opposition to the Motion for Summary Judgment/Adjudication."

We find no abuse of discretion. Scofield acknowledges a failure to number the objections consecutively. Each objection is accompanied by what Scofield terms a "brief explanatory argument" which runs afoul of Rule 3.1354. Finally, Scofield failed to provide a separate proposed order. Instead, the objections leave a space under each objection for the court to either sustain or overrule the objection without space for the court to date or sign its rulings. A trial court does not abuse its discretion in overruling evidentiary objections for failure to comply with Rule 3.1354.

Scofield seeks to establish prejudice by establishing that the court erred in overruling objections to three pieces of evidence. According to Scofield, the court should not have considered the two letters from CVM attorney Robert Collins, an e-mail from Scofield to Johal sent on May 5, 2008, and a check dated April 7, 2009, for $10,000 drawn from Hanson Bridgett's trust fund, made out to CVM and used to pay legal fees in the HLM action.

Scofield argues the Collins correspondence were not authenticated. However, during Scofield's deposition, when asked about the contents of the correspondence, she stated she had received the letters. Similarly, Scofield authenticated the May 5, 2008 e-mail she sent to Johal during her deposition. Finally, during her deposition, Scofield testified she had authorized Hanson Bridgett to transfer $10,000 to CVM. We find no prejudice in the trial court's evidentiary rulings.

## DISPOSITION

The judgment is affirmed.   Hanson Bridgett shall recover costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/s/
RAYE, P. J.

We concur:

/s/
ROBIE, J.

/s/
HOCH, J.