Filed 2/9/24  In re L.M. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re L.M., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E082272 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ2100730) |
| v. | OPINION |
| J.W., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Mona M. Nemat, Judge.  Conditionally reversed and remanded with directions.

Sarah Vaona, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Prabhath Shettigar, Deputy County Counsel, for Plaintiff and Respondent.

1

J.W. (mother) appeals from an order of the juvenile court terminating her parental rights to L.M. (the child). Mother's sole claim of error is that the Riverside County Department of Public Social Services (DPSS) did not comply with its duty to adequately inquire whether the child was an Indian child under the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and related state law. More specifically, she argues DPSS failed to make sufficient inquiry of the child's maternal grandmother and other extended family members and obtain information about possible Indian ancestry.[1]

DPSS concedes the record does not reflect that it made any ICWA inquiry of the maternal grandmother or other extended family members but argues its duty to contact extended family members when inquiring into whether a child is an Indian child was not triggered in this case because the child was detained pursuant to a detention warrant. Finally, DPSS contends that, if we conclude it was under such a duty, at most we should conditionally reverse the order terminating parental rights and remand for further ICWA inquiry and notice, if appropriate.

We reject DPSS's assertion that its duty to inquire of extended family members was never triggered simply because the child was removed from her parents' custody with a warrant. Therefore, we conditionally reverse the orders terminating parental

---

[1] "'[B]ecause ICWA uses the term "Indian," we do the same for consistency, even though we recognize that other terms, such as "Native American" or "indigenous," are preferred by many.'" (*In re Dominick D.* (2022) 82 Cal.App.5th 560, 563, fn. 1.)

rights and remand for additional ICWA inquiry and new notice to relevant Indian tribes, if appropriate.

## I.

## FACTS AND PROCEDURAL BACKGROUND

Because mother challenges none of the juvenile court's other findings made before or during the permanency hearing, we will focus primarily on the limited facts that bear on DPSS's inquiry and notice under ICWA.

On October 24, 2021, DPSS received a referral alleging general neglect of the child due to her parents' substance abuse issues. Mother and father[2] tested positive for methamphetamine, amphetamine, methadone, and marijuana. The child was deemed medically fragile due to prenatal drug exposure. Mother informed DPSS that she had a five-year-old daughter who lived with the child's maternal grandmother. The maternal grandmother confirmed this and told the social worker she was in the process of obtaining legal guardianship of the child's older sister. Maternal grandmother expressed interest in having the child placed with her permanently, and DPSS submitted a referral for a placement assessment.

Mother and father reported they have no Indian heritage.

---

[2] Father did not appeal the order terminating his parental rights to the child and is not a party to this appeal, but our conditional reversal of the order terminating mother's parental rights will inure to father's benefit. (See Cal. Rules of Court, rule 5.725(a)(1), (f).)

The child was taken into custody by DPSS pursuant to a protective custody warrant. In a petition filed under Welfare and Institutions Code[3] section 300, DPSS alleged the child was a dependent of the juvenile court pursuant to section 300, subdivision (b)(1) (substantial risk of serious physical harm or illness).

At the detention hearing, mother and father, who were present, filed Judicial Council Forms, form ICWA-020, Parental Notification of Indian Status, and indicated that they had no Indian heritage. At the close of the hearing, the juvenile court detained the child from both parents. Inter alia, the court found ICWA does not apply and ordered DPSS to conduct an emergency placement assessment of the maternal grandmother, who was not present for the hearing.

In its jurisdiction/disposition report, DPSS recommended the juvenile court order family reunification services be offered to both parents. Mother requested a contested jurisdiction hearing, and father joined. The juvenile court continued the contested jurisdictional hearing to complete the emergency assessment of the child's maternal grandmother, who was present. The emergency placement assessment was denied due to concerns regarding the maternal grandmother's home.

Both parents and the maternal grandmother were present for the contested jurisdictional hearing. The juvenile court again found ICWA does not apply. The court sustained three of the allegations stated in the petition, found the child to be a

---

[3] All undesignated statutory references are to the Welfare and Institutions Code.

dependent of the court, removed the child from the physical custody of her parents, and ordered DPSS to offer the parents family reunification services.

In a report for the six-month status review hearing, DPSS recommended the juvenile court continue family reunification services to both parents. The child was placed with the maternal grandparents. According to the report, the parents still denied having any Indian ancestry. The parents were participating in their reunification services. At a contested review hearing, the juvenile court once again found ICWA does not apply. The court continued family reunification services to the parents.

Less than six months later, DPSS filed declarations of due diligence, stating it had been unable to locate the parents. In a report for the 12-month status review hearing, DPSS now recommended the juvenile court terminate the parents' reunification services. The parents had not made themselves available to be interviewed as to ICWA during the reporting period. The child was doing well in the maternal grandmother's home. After a contested 12-month status review hearing, the juvenile court again found ICWA did not apply. The court terminated family reunification services and set a permanency hearing pursuant to section 366.26.

In a report for the permanency hearing, DPSS requested a continuance to obtain a preliminary adoption assessment report. Mother again denied having Indian ancestry. DPSS tried to inquire of father regarding ICWA, but he declined to speak to the social worker.

DPSS filed its preliminary adoption assessment report and recommended the juvenile court terminate parental rights and free the child for adoption by her caregivers.  Both parents filed petitions pursuant to section 388 and requested the juvenile court order DPSS to offer additional reunification services.

At the contested permanency hearing, the juvenile court denied both section 388 petitions, terminated parental rights, and selected adoption as the child's permanent plan.  Mother timely appealed.

## II.

## DISCUSSION

"ICWA establishes minimum federal standards that a state court must follow before removing Indian children from their families.  [Citation.]  California law implementing ICWA also imposes requirements to protect the rights of Indian children, their families, and their tribes.  (See §§ 224-224.6; [citation].)  An Indian child is any unmarried person under 18 who 'is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.'  (25 U.S.C. § 1903(4); see § 224.1, subd. (b).)"  (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678.)

"'Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case.'  [Citation.]  DPSS and the juvenile court have an 'affirmative and continuing duty to inquire' whether a child in a dependency proceeding 'is or may be an Indian child.'  (§ 224.2,

subd. (a).)  The duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry.  [Citation.]  ICWA also imposes a duty to provide notice of the proceedings to the pertinent Indian tribes.  (25 U.S.C. § 1912(a); § 224.3, subd. (a).)  Notice enables the tribes 'to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in, or exercise jurisdiction over, the matter.'"  (*In re Ricky R.*, *supra*, 82 Cal.App.5th at p. 678.)

"The duty of initial inquiry applies in every dependency proceeding.  [Citation.]  Federal regulations require state courts to ask each participant 'at the commencement' of a child custody proceeding 'whether the participant knows or has reason to know that the child is an Indian child.'  (25 C.F.R. § 23.107(a) (2022).)  State law requires the court to pursue an inquiry '[a]t the first appearance in court of each party' by asking 'each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child.'  (§ 224.2, subd. (c).)  In addition, when DPSS takes a child into temporary custody, the agency must ask 'the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child,' and the reporting party whether the child is or may be an Indian child.  (§ 224.2, subd. (b).)  Extended family members include adults who are the child's stepparents, grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins.  (25 U.S.C. § 1903(2); § 224.1, subd. (c).)"  (*In re Ricky R.*, *supra*, 82 Cal.App.5th at pp. 678-679.)

Three panels of this court have recently held that the duty to inquire of extended family members under section 224.2, subdivision (b), is not triggered when the child is taken into custody pursuant to a detention warrant. (*In re Robert F*. (2023) 90 Cal.App.5th 492, review granted July 26, 2023, S279743 (*Robert F*.); *In re Ja.O*. (2023) 91 Cal.App.5th 672, review granted July 26, 2023, S280572 [adopting the reasoning of *Robert F*.]; and *In re Andres R.* (2023) 94 Cal.App.5th 828, review granted Nov. 15, 2023, S282054 [majority opinion defending the holdings in *Robert F*. and *Ja.O*.].) Inter alia, section 224.2, subdivision (b), provides: "If a child is placed into the temporary custody of a county welfare department *pursuant to Section 306* . . . , the county welfare department . . . has a duty to inquire whether that child is an Indian child," and the duty of inquiry includes but is not limited to contacting and interviewing extended family members. (Italics added.) In *Robert F.,* this court held that under the plain language of section 224.2, subdivision (b), the extended duty of inquiry only applies if a child is taken into protective custody under section 306, and, by definition, a child taken into custody with a protective custody warrant is taken into custody pursuant to section 340. (*Robert F*., at pp. 500-501.) We decline to follow *Robert F*.

The Legislature has mandated that, when we interpret a statute, our duty "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as

8

will give effect to all." (Code Civ. Proc., § 1858.) Pursuit of the Legislature's intent, if possible, must be this court's objective. (*Id.*, § 1859.) It is beyond peradventure that, when interpreting a statute, the plain text and plain meaning are the strongest indicators of the Legislature's intent and should almost always be the first and last step in our inquiry. (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1232-1233.) But, our Supreme Court has long instructed courts to not get hung up on the literal text of a statute if in doing so we miss the forest for the trees.

"[T]he 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in the light of the statutory scheme [citation]; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation]." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.)

9

In *In re Delila D.* (2023) 93 Cal.App.5th 953, review granted Sept. 27, 2023, S281447 (*Delila D.*), another panel of this court held that neither the plain language of section 224.2, subdivision (b), the structure of the statutory scheme, nor the relevant legislative history and purpose support the holding in *Robert F.*, *supra*, 90 Cal.App.5th 492. (But see *Delila D.*, at pp. 977-981 (dis. opn. of Miller, J.).) Most importantly, the majority in *Delila D.* held that the fundamental premise to the decision in *Robert F.* was flawed because "[s]ection 306 authorizes a department to maintain a child in temporary custody both when the child has been taken from home by a social worker or police officer under exigent circumstances without a warrant (§ 306, subd. (a)(1) & (2)) *and* when the child has been taken from home by means of a protective custody warrant issued under section 340 (§ 306, subd. (a)(1))." (*Delila D.*, at p. 971.)

The majority in *Delila D.* persuasively concluded that "the Legislature enacted section 224.2[, subdivision] (b) to impose on [child welfare] departments a broad duty to inquire that applies regardless of how a child is initially removed from home," "[t]he costs of broadening the inquiry are slight, as departments are already required to identify and to contact extended family members for various reasons unrelated to ICWA during dependency proceedings," "[b]ut the 'payoff can be large for tribes, whose children carry their cultures into the future.'" (*Delila D.*, *supra*, 93 Cal.App.5th at p. 975.) "[I]t simply doesn't make sense to apply different initial inquiries depending on how the child was initially removed from home, as that procedural happenstance has nothing to do with a child's ancestry." (*Ibid.*)

10

As do we, the majority in *Delila D.* acknowledged that, absent compelling reasons, we generally follow decisions of our own court. (*Delila D.*, *supra*, 93 Cal.App.5th at p. 975; see *Estate of Sapp* (2019) 36 Cal.App.5th 86, 109, fn. 9 ["Absent a compelling reason, the Courts of Appeal are normally loath to overrule prior decisions from another panel of the same undivided district or from the same division."].) Nonetheless, the majority in *Delila D.* found three compelling reasons to not follow *Robert F.* "First, that decision itself departed from earlier decisions of our court holding the duty of initial inquiry in section 224.2[, subdivision] (b) 'applies in every dependency proceeding.' [Citations.] Second, *Robert F.*'s interpretation is, in our view, based on a plain error of statutory construction that is easily corrected, and the error if put into force would significantly undermine the purpose of ICWA and the California statutes implementing ICWA. Third, the *Robert F.* interpretation is of recent origin, meaning neither courts nor the public have yet placed significant reliance on it." (*Delila D.*, at pp. 975-976.) We agree. Moreover, we hasten to add that, at the time of writing, every other district of the Court of Appeal to address this issue in a published opinion has sided with our decision in *Delila D.* and rejected the contrary reasoning of *Robert F.* (*In re L.B.* (2023) 98 Cal.App.5th 512 [First Dist., Div. Four]; *In re C.L.* (2023) 96 Cal.App.5th 377 [Third Dist.]; *In re Jerry R.* (2023) 95 Cal.App.5th 388 [Fifth Dist.]; *In re V.C.* (2023) 95 Cal.App.5th 251 [First Dist., Div. Two].)

11

We accept DPSS's concession that the record on appeal reflects no ICWA inquiry whatsoever was made of the child's maternal grandmother (or, for that matter, the child's maternal grandfather), with whom the child was placed throughout this proceeding and presumably was available to be interviewed. Therefore, we conditionally reverse and remand for further ICWA inquiry and notice to relevant Indian tribes, as appropriate.

## III.

## DISPOSITION

The juvenile court's orders terminating the parental rights to the child are conditionally reversed. On remand, the juvenile court shall direct DPSS to provide the court with a supplemental report detailing what additional efforts, if any, it has taken to obtain information about the child's possible Indian ancestry, including the names and other relevant information of family members interviewed. The juvenile court shall then determine whether the ICWA inquiry was adequate and, if applicable, whether proper notice has been given to relevant Indian tribes. If the juvenile court determines the inquiry completed and the notice given were adequate (and, if after receiving notices, the relevant tribes do not respond or respond that the child is not an Indian child within the meaning of ICWA), the orders terminating parental rights to the child shall immediately be reinstated and further proceedings shall be conducted as appropriate.

In the alternative, if the juvenile court determines the inquiry and/or notice conducted was inadequate, it shall direct DPSS to conduct additional inquiry and provide additional notice to the relevant Indian tribes of any additional relevant information DPSS might have received.  The court shall then determine whether the additional inquiry and notice are adequate.  If, after receiving notices, the relevant tribes do not respond or respond that the child is not an Indian child within the meaning of ICWA, the orders terminating parental rights to the child shall immediately be reinstated, and further proceedings shall be conducted, as appropriate.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
                                                                                        J.

We concur:

RAMIREZ
                        P. J.

RAPHAEL
                    J.